**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| **DORIS ANN SCOTT** and **ORIEL MOORE**, ) | |
| ) | |
| **Plaintiffs**, ) | |
| ) | |
| **v.** ) | |
| ) | |
| **TREVOR FOLEY**, in his official and individual ) | |
| capacity as DIRECTOR of the MISSOURI ) | |
| DEPARTMENT OF CORRECTIONS, ) | |
| ) | |
| **KELLY MORRISS**, in his official and ) | |
| individual capacity as WARDEN of the ) | |
| JEFFERSON CITY CORRECTIONAL CENTER, ) | |
| ) | |
| **CENTURION OF MISSOURI, LLC**, ) | |
| ) | |
| **JUSTIN DAVISON**, ) | |
| ) | |
| **JUSTIN M. LEGGINS**, ) | |
| ) | |
| **JACOB A. CASE**, ) | |
| ) | **Case No. 2:24-cv-04107-MDH** |
| **AARON C. BROWN**, ) | |
| ) | **JURY TRIAL DEMANDED** |
| **GREGORY H. VARNER**, ) | |
| ) | |
| **BRYANNE M. BRADSHAW**, ) | |
| ) | |
| **RYAN WILLIAMS**, ) | |
| ) | |
| **WILLIAM WELLS**, ) | |
| ) | |
| **CRAIG GLATCZAK**, ) | |
| ) | |
| **ZACHARY KOPP**, ) | |
| ) | |
| **ONYEWUCHI NKWOCHA**, ) | |
| ) | |
| **SEAN REYNOLDS**, and ) | |
| ) | |
| **JENNIFER LONG**, ) | |
| ) | |

**Defendants.**                    )

## COMPLAINT

Plaintiffs, DORIS ANN SCOTT and ORIEL MOORE, by and through their attorneys, Disparti Law, LLC, Action Injury Law Group, LLC, Hart McLaughlin & Eldridge, LLC, and Embry Law, LLC, complain as follows against Defendants, TREVOR FOLEY, in his official and individual capacity as DIRECTOR of the MISSOURI DEPARTMENT OF CORRECTIONS ("MDOC"), KELLY MORRISS, in his official and individual capacity as WARDEN for the JEFFERSON CITY CORRECTIONAL CENTER ("JCCC"), CENTURION OF MISSOURI, LLC, Missouri Department of Corrections employees JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA, SEAN REYNOLDS, and Centurion of Missouri, LLC employee JENNIFER LONG:

## PRELIMINARY STATEMENT

1.      OTHEL MOORE, JR., was killed by those entrusted to protect him. MOORE died in the most heinous of ways, due to the egregious actions, inexcusable neglect and depraved indifference of the individual guard defendants and those that create a culture of indifference and reckless disregard at the Missouri Department of Corrections and Centurion of Missouri, LLC. The United States Constitution is a sacred document. The Constitution establishes the principles our great country was founded upon and for which all citizens are obligated to abide and honor. Among these rights are that all people are created equal. The Constitution is unambiguous that all people should be free from cruel and unusual punishment, particularly for those in custody who are entirely dependent on the state for their well-being. These tenets are particularly true for those

that take an oath to protect and defend these civil liberties. Our society relies on and operates under the clear expectations that those in authority must protect all others under their care and custody from violation of these rights. Yet, instead of fulfilling their duty, the defendants violated these principles, betraying not only their oath but also the basic decency and sanctity of human life. OTHEL MOORE, JR. was brutally killed at the hands of those that were vested with the obligation to protect him and entrusted with his care. Rather than providing protection, these defendants collectively, and individually, saw to it that MOORE suffered in the worst way possible before causing his death. The events were recorded on video and witnessed by many. This lawsuit seeks to expose the horrific circumstances surrounding MOORE's death and to hold accountable those responsible for his unwarranted, tragic, and preventable demise. Four officers now face charges for second-degree assault and felony murder, with an additional officer charged with second-degree involuntary manslaughter. This civil rights action is brought to obtain justice for OTHEL MOORE, JR., whose life was prematurely taken in violation of his constitutional rights.



2.      On December 8, 2023, Defendants JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA, SEAN REYNOLDS and JENNIFER LONG brazenly carried out (or failed to stop) a brutal, violent attack on MDOC inmate OTHEL MOORE, JR., in plain view of countless eyewitnesses and surveillance cameras, and then, with a depraved and deliberate indifference to his humanity, ignored his struggle to breathe, and left him to slowly and painfully suffocate. We don't need to wonder what lead to MOORE's death. It is made crystal clear on prison surveillance video and detailed eyewitness accounts.

3.      MOORE had done nothing wrong when he was brutally restrained and mummified. The defendants attack on OTHEL MOORE, JR. and deliberate indifference to his serious medical needs was not an isolated incident, but rather the product of a systematic pattern pf coercion, brutality, intimidation, reckless disregard and deliberate indifference fostered the Missouri Department of Corrections' highest-ranking officials. This institutionalized culture of violence was orchestrated and ratified by TREVOR FOLEY, in his official capacity as Director of MDOC, and KELLY MORRISS, in her capacity as Warden of JCCC. Their tacit approval of such tactics cultivated an environment where officers felt empowered to use excessive force with impunity. Any one of the defendants could have put a stop to the inhuman treatment of MOORE, but instead, they contributed to and otherwise stood idly by and watched him slowly and painfully gasp and fight for his last breath.

4.      At the time of their brutal and vicious treatment of MOORE, JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK,

ZACHARY KOPP, ONYEWUCHI NKWOCHA and SEAN REYNOLDS were members of a MDOC Corrections Emergency Response Team ("CERT DEFENDANTS"), a tactical squad trained to handle disturbances and emergency situations within correctional facilities. However, within MDOC, CERT had become synonymous not with maintaining order, but with enforcing it through coercion, intimidation, and violence. The CERT Defendants stand accused of grossly abusing their authority to brutalize inmates, with little accountability for their conduct.

5. OTHEL MOORE JR., a healthy 38-year-old Black man, had a right to rehabilitation and the prospect of a future beyond his incarceration at JCCC. Instead, due to the inhumane actions of defendants, he was subjected to a de facto death sentence. Moore endured a relentless onslaught of excessive and unnecessary force, including repeated deployments of OC spray, the use of shock gloves, the application of severely restrictive prone restraints, and the imposition of a spit hood, helmet, and leg wraps. Following this, MOORE was forcibly confined to a restraint cart and isolated in a small, enclosed space known as a "dry cell." Over the course of half an hour, MOORE repeatedly told the CERT DEFENDANTS that he was unable to breathe, but they ignored his pleas. Unprovoked and unwarranted, the CERT DEFENDANTS' actions culminated in MOORE being left to die alone in a cell, deprived of the basic dignity of medical care and human attention. MOORE should not have died. He just needed someone to care about him. But the individual defendants, the Missouri Department of Corrections and Centurion of Missouri, LLC failed MOORE.

6. The Missouri Department of Corrections website lists the following values: "We value safe work environments, a capable workforce and reduced risk and recidivism. We value integrity and respect. We value supportive leadership. We value employee participation and teamwork." Yet, none of these values were apparent when defendants unnecessarily pepper

sprayed MOORE not once but twice, improperly placed a spit mask and helmet over his face and head and shackled him to a cart and left him to die. The defendants' callousness and indifference to MOORE's life was on full display. MOORE should not have died. Had the defendants followed their own values, MOORE would not have died.

7.      Due to their depraved actions, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER were each charged with second-degree assault and felony murder. BRYANNE M. BRADSHAW was charged with second-degree involuntary manslaughter.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §1331 and civil rights cases pursuant to 28 U.S.C. §1343, as well as supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

9.      Venue is proper in this District under 28 U.S.C. § 105(b)(4) because all incidents, events, and occurrences giving rise to this action occurred in the Western District of Missouri, Central Division, and the parties reside in or may be found in this District.

10.     Pursuant to R.S.Mo. §506.500.1(3), this Court has jurisdiction because the Plaintiff's decedent's injuries and the torts alleged occurred in Cole County, Missouri.

## PARTIES

11.     DORIS ANN SCOTT is a resident of the State of Colorado. Ms. SCOTT is the biological mother of OTHEL MOORE, JR. and is qualified to bring this action on behalf of all Class I wrongful death statutory beneficiaries.

12.     ORIEL MOORE is a resident of the State of Colorado. Ms. MOORE is the biological sister of OTHEL MOORE, JR. and is qualified to bring this action on behalf of all Class

II wrongful death statutory beneficiaries.

13. At all relevant times, OTHEL MOORE, JR. resided in the Jefferson City Correctional Center, located at 8200 No More Victims Road, Jefferson City, MO, 65101.

14. Defendant TREVOR FOLEY is an employee of the State of Missouri and Director of the Missouri Department of Corrections, having taken over the role from MDOC's previous Director Anne Precythe. TREVOR FOLEY is named as a defendant in this action in both his official capacity as the Director of the Missouri Department of Corrections and in his individual capacity. As Director, TREVOR FOLEY holds the ultimate position of authority within the Missouri Department of Corrections and is responsible for the maintenance, implementation, and oversight of department policies, training programs, and operational procedures. He has the authority to enact and enforce systemic practices affecting the treatment of inmates and the conduct of correctional personnel.

15. In his official capacity, TREVOR FOLEY represents the interests and actions of the Missouri Department of Corrections and is responsible for the conduct of the department as a government entity. It is alleged that under his leadership, policies or customs were created, maintained, or allowed to persist that directly contributed to the violations of constitutional rights as detailed within this lawsuit, pursuant to the doctrine established in *Monell v. Department of Social Services of the City of New York*. Actions taken in his official capacity are, for the purview of this Complaint, actions of the Missouri Department of Corrections itself.

16. In his individual capacity, TREVOR FOLEY is alleged to have personally engaged in, directed, or been deliberately indifferent to actions that resulted in OTHEL MOORE, JR.'s constitutional rights being violated, including, but not limited to, the failure in his supervisory role to prevent the misconduct of subordinates within the department. Claims asserted against

TREVOR FOLEY in his individual capacity are aimed to address his personal conduct and any direct involvement he had in the alleged wrongful actions, independent of his responsibilities as Director of the Missouri Department of Corrections.

17.     At all relevant times, Defendant KELLY MORRISS is an employee of the State of Missouri the warden of the JEFFERSON CITY CORRECTIONAL CENTER, having taken over the role from Doris Falkenrath. KELLY MORRISS is named as a defendant in this action in both his official capacity as the Warden of JCCC and in his individual capacity.

18.     In his role as Warden, KELLY MORRISS exercises managerial and supervisory control over the operations of JCCC, including the implementation and enforcement of policies, the training and discipline of correctional officers, and the overall treatment of the inmate population under his jurisdiction.

19.     In his official capacity, KELLY MORRISS represents the operational actions and decisions of JCCC. Allegations under this designation contend that under his supervision and control, policies, practices, and customs were established or sustained that resulted in the abridgment of constitutional rights, relevant to the doctrines cited in *Monell v. Department of Social Services of the City of New York*. Acts and omissions made in his official capacity are considered those of the Jefferson City Corrections Center entity.

20.     Conversely, in his individual capacity, KELLY MORRISS is accused of direct complicity, including intentional actions and inactions, reckless disregard, or deliberate indifference to the conduct of subordinates, which has led to the infringement of rights as documented within this suit. Individual capacity claims seek to address and find redress for conduct and decisions he personally enacted or authorized, which were outside the scope of acceptable managerial oversight and constitute a breach of his legal duties.

21.     Defendant CENTURION OF MISSOURI, LLC is a duly licensed health care provider in the State of Missouri and is in the business of providing health care services. CENTURION is a limited liability company formed under Missouri law. At all relevant times, CENTURION provided health care services at JCCC, pursuant to a contract with the Missouri Department of Corrections.

22.     Defendant JUSTIN DAVISON is a resident of Missouri and, at all relevant times, was an employee at the Missouri Department of Corrections. On December 8, 2023, he was working at JCCC as the JCCC CERT Field Commander when he unlawfully used excessive force against OTHEL MOORE, JR., displayed deliberate indifference in failing to provide emergency medical care to OTHEL MOORE, JR., and/or failed to intervene in the attack on OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

23.     Defendant JUSTIN M. LEGGINS is a resident of Cadet, Missouri and, at all relevant times, was an employee at the Missouri Department of Corrections. On December 8, 2023, he was working at JCCC as a member of a MDOC CERT unit when he unlawfully used excessive force against OTHEL MOORE, JR., displayed deliberate indifference in failing to provide emergency medical care to OTHEL MOORE, JR., and/or failed to intervene in the attack on OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

24.     Defendant JACOB A. CASE is a resident of Desloge, Missouri and, at all relevant times, was an employee at the Missouri Department of Corrections. On December 8, 2023, he was working at JCCC as a member of a MDOC CERT unit when he unlawfully used excessive force against OTHEL MOORE, JR., displayed deliberate indifference in failing to provide emergency medical care to OTHEL MOORE, JR., and/or failed to intervene in the attack on OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

25.     Defendant AARON C. BROWN is a resident of Park Hills, Missouri and, at all relevant times, was an employee at the Missouri Department of Corrections. On December 8, 2023, he was working at JCCC as a member of a MDOC CERT unit when he unlawfully used excessive force against OTHEL MOORE, JR., displayed deliberate indifference in failing to provide emergency medical care to OTHEL MOORE, JR., and/or failed to intervene in the attack on OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

26.     Defendant GREGORY H. VARNER is a resident of Park Hills, Missouri and, at all relevant times, was an employee at the Missouri Department of Corrections. On December 8, 2023, he was working at JCCC as a member of a MDOC CERT unit when he unlawfully used excessive force against OTHEL MOORE, JR., displayed deliberate indifference in failing to provide emergency medical care to OTHEL MOORE, JR., and/or failed to intervene in the attack on OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

27.     Defendant BRYANNE M. BRADSHAW is a resident of Jefferson City, Missouri and, at all relevant times, was an employee at the Missouri Department of Corrections. On December 8, 2023, she was working at JCCC as a member of a MDOC CERT unit when she unlawfully used excessive force against OTHEL MOORE, JR., displayed deliberate indifference in failing to provide emergency medical care to OTHEL MOORE, JR., and/or failed to intervene in the attack on OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

28.     Defendant RYAN WILLIAMS is a resident of Missouri and, at all relevant times, was an employee at the Missouri Department of Corrections. On December 8, 2023, he was working at JCCC as a member of a MDOC CERT unit when he unlawfully used excessive force against OTHEL MOORE, JR., displayed deliberate indifference in failing to provide emergency

medical care to OTHEL MOORE, JR., and/or failed to intervene in the attack on OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

29.     Defendant WILLIAM WELLS is a resident of Missouri and, at all relevant times, was an employee at the Missouri Department of Corrections. On December 8, 2023, he was working at JCCC as a member of a MDOC CERT unit when he unlawfully used excessive force against OTHEL MOORE, JR., displayed deliberate indifference in failing to provide emergency medical care to OTHEL MOORE, JR., and/or failed to intervene in the attack on OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

30.     Defendant CRAIG GLATZCZAK is a resident of Missouri and, at all relevant times, was an employee at the Missouri Department of Corrections. On December 8, 2023, he was working at JCCC as a member of a MDOC CERT unit when he unlawfully used excessive force against OTHEL MOORE, JR., displayed deliberate indifference in failing to provide emergency medical care to OTHEL MOORE, JR., and/or failed to intervene in the attack on OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

31.     Defendant ZACHARY KOPP is a resident of Missouri and, at all relevant times, was an employee at the Missouri Department of Corrections. On December 8, 2023, he was working at JCCC as a member of a MDOC CERT unit when he unlawfully used excessive force against OTHEL MOORE, JR., displayed deliberate indifference in failing to provide emergency medical care to OTHEL MOORE, JR., and/or failed to intervene in the attack on OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

32.     Defendant ONYEWUCHI NKWOCHA is a resident of Missouri and, at all relevant times, was an employee at the Missouri Department of Corrections. On December 8, 2023, he was working at JCCC as a member of a MDOC CERT unit when he unlawfully used excessive

force against OTHEL MOORE, JR., displayed deliberate indifference in failing to provide emergency medical care to OTHEL MOORE, JR., and/or failed to intervene in the attack on OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

33. Defendant SEAN REYNOLDS is a resident of Missouri and, at all relevant times, was an employee at the Missouri Department of Corrections. On December 8, 2023, he was working at JCCC as a member of a MDOC CERT unit when he unlawfully used excessive force against OTHEL MOORE, JR., displayed deliberate indifference in failing to provide emergency medical care to OTHEL MOORE, JR., and/or failed to intervene in the attack on OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

34. Defendant JENNIFER LONG is a resident of Missouri and, at all relevant times, was an employee of Defendant CENTURION OF MISSOURI, LLC. On December 8, 2023, she was working at JCCC when she displayed deliberate indifference in failing to provide emergency medical care to OTHEL MOORE, JR., resulting in and/or contributing to OTHEL MOORE, JR.'s death.

## FACTUAL BACKGROUND

35. In the early morning hours of December 8, 2023, the CERT DEFENDANTS initiated unscheduled, random cell inspections at JCCC in the housing unit (HU 7 B-Wing) where OTHEL MOORE, JR. was detained.

36. The operation was marked by excessive use of force and OC spray by the CERT DEFENDANTS.

37. At approximately 7:32 a.m., Defendants LEGGINS, GLATCZAK and WELLS entered MOORE's cell, B-215.

38. At approximately 7:33 a.m., MOORE was aggressively extracted from his cell

with his hands in wrist restraints behind his back. MOORE was then placed standing outside his cell, with his body facing the cell doors.

39.     Without provocation, Defendant LEGGINS suddenly stepped toward MOORE and pepper sprayed him in the face at close range with his MK-9.

40.     Defendant WELLS and GLATZCHAK then escorted MOORE toward the stairs.

41.     While escorting Moore, and without provocation or any movements that could be perceived as a reasonable threat, Defendant WELLS and GLATZCHAK suddenly took OTHEL MOORE, JR. to the ground, slamming his head onto the concrete floor.

42.     Defendant CASE ascended the stairs and, despite MOORE being restrained by three officers, administered pepper spray with his MK-9 directly to MOORE's face at close range.

43.     After this second round of pepper spray, Defendant WELLS and GLATZCHAK stood MOORE back up and escorted him down the stairs to the ground floor "day room."

44.     Once Moore was in the "day room," Defendant JUSTIN DAVISON ordered MOORE to be placed in a WRAP restraint device.

45.     The WRAP device is a restraint system designed to immobilize a person's body movement. The WRAP cart is designed for moving individuals that are restrained within the WRAP restraint system.

46.     At approximately 7:36 a.m., Defendant BROWN brought a cart containing the WRAP restraint device to the "day room."

47.     Defendant BROWN, a WRAP trainer, placed the WRAP device on the floor in front of a compliant MOORE, forced him to his knees, and rolled him onto his stomach with his hands handcuffed behind his back.

48.     Defendant BROWN then applied leg restraints to MOORE.

49.     Restrained and pinned down, MOORE repeatedly vocalized his distress, informing the officers that he could not breathe.

50.     Despite MOORE's compliance, the officers rolled him into a sitting position and placed chest harness on him.

51.     Desperate to clear the burning pepper spray from his mouth, MOORE spat on the floor, consciously avoiding the officers.

52.     Deliberately disregarding and ignoring MOORE's need to decontaminate from the burning pepper spray, Defendant BROWN forcibly placed a spit hood over his head, even though MOORE was fully restrained and cooperative.

53.     When Defendant BROWN applied the spit mask, he did so by placing the thick, white fabric over a substantial portion of MOORE's face, including his mouth and nose, further obstructing his already labored breathing.

54.     Defendant BROWN made no attempt to adjust or remove the spit mask to allow fresh air or facilitate decontamination efforts despite the fact that it obviously was interfering with MOORE's ability to breathe.

55.     None of the other CERT DEFENDANTS took any action to adjust the spit mask but rather they allowed MOORE to continue to struggle to breathe with it obviously misplaced.

56.     Further exacerbating his respiratory crisis, the CERT DEFENDANTS placed a helmet on MOORE.

57.     The CERT DEFENDANTS then lifted MOORE onto the WRAP restraint cart, secured his feet with his back pulled away from the cart, and transported him to Housing Unit 8.

58.     Upon arrival, Defendant BRADSHAW unlocked the door to the "dry cell."

59.     With MOORE in the cart and restrained in the WRAP with a spit hood and helmet over his head and face, Defendant BRADSHAW then backed him into the "dry cell."

60.     At 7:50 a.m., Defendant BRADSHAW shut the "dry cell" door and locked it.

61.      Struggling to breathe, MOORE was trapped and left alone in the "dry cell," restrained and struggling for over 30 agonizing minutes without any check or assistance.

62.     In visible agony, MOORE fought for every breath, his intense distress evident as he struggled to survive.

63.     Numerous officers, including, but not limited to, Defendants KOOP, BRADSHAW, REYNOLDS and NKOWCHA, occasionally peered through the "dry cell" window as the critically distressed MOORE pled for help.

64.     Despite MOORE's clear distress, unresponsiveness and desperate struggle for air, Defendants KOOP, BRADSHAW, REYNOLDS, and NKOWCHA did nothing. They failed to initiate a "Code 16" – the critical call that would have alerted MDOC medical staff to MOORE's life-threatening emergency. Instead, they stood by, refusing to take any action as MOORE's condition deteriorated before their eyes.

65.     At or around 8:13 a.m., MOORE stopped moving.

66.     Nearly ten minutes later, Defendant BRADSHAW unlocked the "dry cell" and checked on MOORE, accompanied by Defendant LONG, a licensed practical nurse.

67.     Defendant LONG pulled down on the spit mask covering MOORE's face, then placed her hand on top of his head to reposition it. However, MOORE's head lifelessly fell back to the right side, showing no signs of voluntary movement.

68.     Defendant LONG then removed MOORE's shoes and checked his feet for a pulse but was unable to find one.

69.     Defendant LONG placed her left hand on top of MOORE's head and administered a sternum rub, causing the WRAP cart to jolt backwards.

70.     Despite this, MOORE remained motionless, and when Defendant LONG released his head, it fell lifelessly back to the right side once again, underscoring the dire state of his condition.

71.     Defendant LONG then attempted to place a pulse oximeter on one of MOORE's fingers but was unable to reach his hands, which were improperly positioned underneath him.

72.     Defendant LONG then moved MOORE's head with her left hand and placed her right hand on his neck.

73.     At 8:25 a.m., Defendant LONG exited the "dry cell" as Defendant BRADSHAW milled around aimlessly.

74.     More than two minutes later, several officers entered the dry cell and attempted a sternum rub. MOORE remained lifeless and unresponsive.

75.     Eventually, an officer released a strap near MOORE's feet, causing his upper body and shoulders to fall back against the cart.

76.     MOORE, still restrained to the WRAP cart, was wheeled out of the dry cell.

77.     At or around 8:29 a.m., MOORE was brought to the Emergency Room in the Main Medical Corridor at JCCC and removed from the WRAP restraint device.

78.     At or around 8:52 a.m., emergency medical services ("EMS") arrived at JCCC.

79.     MOORE was declared dead later that morning.

80.     The medical examiner determined positional asphyxiation as the cause of death and classified it as a homicide.

81.     The CERT DEFENDANTS either participated in placing or observed MOORE

being placed in the WRAP restraint system.

82.    The CERT DEFENDANTS either participated in placing or observed MOORE being placed in the dry cell, where he was left unattended for more than 30 minutes.

83.    When the CERT DEFENDANTS aggressively assaulted MOORE by repeatedly deploying OC spray at close range to his face and subsequently restraining him in the WRAP system, the CERT DEFENDANTS lacked any reasonable or objective belief that:

a.    MOORE was actively engaged in, or about to engage in, any form of resistance to the officers;

b.    MOORE was obstructing, or likely to obstruct, the CERT DEFENDANTS in the lawful execution of their duties, or that his actions hindered their ability to perform their responsibilities; or

c.    Moore posed any immediate, legitimate, or physical threat to the safety of the CERT DEFENDANTS or others in the vicinity, thereby warranting the use of force.

84.    Furthermore, the CERT DEFENDANTS' actions were disproportionate to the situation, given that MOORE was unarmed, not violent, and exhibited no behavior justifying the escalation of force to the extent used. Their failure to de-escalate the situation and their unnecessary and excessive force violated Moore's constitutional rights.

85.    The CERT DEFENDANTS' conduct was not only excessive but also punitive in nature, serving no legitimate correctional purpose and reflecting a malicious intent or reckless disregard for MOORE's rights.

86.    The use of excessive and unprovoked force by the CERT DEFENDANTS also constituted a clear violation of MDOC policies and procedures.

87.     Furthermore, Defendants' blatant disregard for MOORE's obvious need for medical intervention stands as a direct contravention of MDOC standards and a clear violation of his constitutionally protected rights under the Eighth Amendment, which prohibits cruel and unusual punishment. Their deliberate indifference to his serious medical needs not only exacerbated his injuries but also reflects a pattern of misconduct and neglect. This failure to provide necessary medical care demonstrates a willful neglect of their duty to ensure the well-being of those in their custody, further solidifying their liability for violating MOORE's civil rights.

88.     Following this incident, the Missouri Department of Corrections conducted an internal investigation into MOORE's death.

89.     The investigation concluded that Defendants JUSTIN M. LEGGINS and JUSTIN CASE both violated MDOC's use of force policy and Response Team Tactics and Security Equipment policy. Specifically, LEGGINS and CASE were cited for using excessive force and spraying MOORE in the face with OC spray at a distance of less than 6 feet.

90.     Additionally, the investigation found that Defendants KOPP, BRADSHAW, NKWOCHA, REYNOLDS and LONG violated MDOC policy by failing to signal a "Code 16" in which medical staff are notified of a medical emergency. The investigation found that they were all aware that MOORE was unresponsive but failed to take appropriate action.

91.     On June 28, 2024, Cole County prosecutor charged JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER with assault in the second degree and felony murder in the second degree. BRYANNE M. BRADSHAW was charged with involuntary manslaughter in the second degree.

**MDOC's and CENTURION's policy, training, and supervision failures resulted in the unjustified use of excessive force against Othel Moore, Jr., the failure to provide medical**

**care and the failure to intervene in the death of Othel Moore, Jr.**

92.     The incident involving OTHEL MOORE, JR. is part of a broader, entrenched pattern of behavior by the MDOC CERT units, including the CERT DEFENDANTS. Under MDOC's directive, a systematic practice of fear-mongering, infliction of pain, and intimidation tactics has been used against inmates, defining a culture of cruelty which is explicitly forbidden by the Eighth Amendment as cruel and unusual punishment.

93.     Such a pattern of behavior by MDOC CERT units is not merely the result of rogue actions by individual officers, such as the CERT DEFENDANTS, but is, in fact, a result of deliberate indifference and tacit approval by the highest officials within MDOC, including, but not limited to, TREVOR FOLEY, in his official capacity as Director of MDOC, and KELLY MORRISS, in her official capacity as Warden of JCCC.

94.     As the ultimate authority within the Missouri Department of Corrections on December 8, 2023, TREVOR FOLEY bore the responsibility for the comprehensive oversight of MDOC personnel, which encompasses a wide range of managerial duties including hiring, training, and disciplinary action.

95.     Concurrently, KELLY MORRISS held ultimate jurisdiction over JCCC, similarly charged with the oversight of hiring, training, and managing employees, thereby directly influencing the operational culture within JCCC.

96.     Under the leadership of TREVOR FOLEY and KELLY MORRISS, a deliberate pattern of deploying CERT to intimidate and brutalize inmates was established at MDOC, representing an official policy or an established custom of MDOC, thereby satisfying the "policy or custom" requirement for liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

97. The pervasive misuse of power by MDOC CERT units, allowed to flourish under a failure of leadership to enact appropriate supervision or training, is a flagrant demonstration of the administration's indifference towards the constitutional rights of the inmates they oversee, as was the case with OTHEL MOORE, JR.

98. Senior officials within MDOC have shown a consistent and conscious disregard for the necessity to reform the excessively harsh methods employed by CERT units, contributing to a deep-seated culture of institutional violence.

99. Upon information and belief, MDOC policymakers were aware of the recurrent excessive use of force used by MDOC CERT units. Despite this, leaders like TREVOR FOLEY and KELLY MORRISS have consistently failed to implement remedial measures, thereby reinforcing the abusive, unconstitutional conduct at issue.

100. The oppressive and abusive actions of MDOC CERT units, including, but not limited to, the CERT DEFENDANTS, are sufficiently widespread, persistent, and recurrent that they cannot be dismissed as isolated incidents. This systematic behavior implies complicity at the highest levels of governance and management within MDOC.

101. By allowing MDOC CERT units, including, but not limited to, the CERT DEFENDANTS, to operate without consequence, senior officials have not only tacitly approved but have strengthened a legacy of constitutional breaches manifest in continuous violence and oppression.

102. The unchecked and flagrant abuses by the MDOC CERT units, including, but not limited to, the CERT DEFENDANTS, have directly caused indelible harm to the inmates subjected to their control, evidenced by the harrowing experiences and ultimately the preventable death of OTHEL MOORE, JR.

103.     These egregious violations of constitutional rights must be urgently addressed in the form of injunctive relief to halt the ongoing violations, punitive actions to hold accountable those responsible, and comprehensive reform measures to radically improve MDOC's policies and training to guard against future transgressions.

**COUNT I – 42 USC § 1983 – Eighth Amendment – Excessive Force**
**(Against JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA and SEAN REYNOLDS)**

104.     Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

105.     At all relevant times, OTHEL MOORE, JR. had a constitutional right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

106.     At all material times, Defendants were acting under the color of state law as agents and employees of the Missouri Department of Corrections.

107.     At all material times, Defendants were wearing official MDOC uniforms and were acting in the course and scope of their duties as MDOC employees at the time they restrained, assaulted, brutalized and killed OTHEL MOORE, JR.

108.     At all relevant times, OTHEL MOORE, JR. was unarmed and not a threat to Defendants.

109.     At all relevant times, Defendants had no factual basis to support a reasonable belief that OTHEL MOORE, JR. posed a threat to his and/or her safety or to the safety of others.

110.     Any reasonable corrections officer would recognize that the repeated, unprovoked use of OC spray, shock gloves, overly restrictive restraints, and the forced application of a spit

hood, helmet, and WRAP restraint system – followed by leaving Moore confined in a restraint cart, unattended in the "dry cell" – constituted not only excessive force but also cruel and unusual punishment, in direct violation of the Eighth Amendment. These actions, taken together, demonstrate a deliberate indifference to Moore's well-being, far exceeding the constitutional limits of permissible conduct.

111.    A competent and reasonable corrections officer would also have recognized that ignoring a detainee's repeated pleas for help and apparent respiratory distress for an extended period of thirty minutes represents a blatant and deliberate disregard for human life. This inaction amounts to cruel and unusual punishment, violating the Eighth Amendment's protections against such treatment. By failing to respond to clear signs of medical distress, Defendants displayed a reckless disregard for MOORE's physical condition and the potential for serious harm or death.

112.    Moreover, it is within the basic understanding of any trained corrections officer that neglecting to provide emergency medical assistance to an individual who presents no immediate threat – especially when force has already been used in a manner that could have life-threatening consequences – constitutes a gross violation of the detainee's constitutional rights. This failure to act not only breaches the officers' duty of care but also violates the protections guaranteed under the U.S. Constitution.

113.    Defendants' conduct was objectively unreasonable.

114.    As a direct and proximate result of Defendants' actions, OTHEL MOORE, JR. sustained serious bodily injuries, emotional distress, pain and suffering, and loss of his young life.

115.    As a direct and proximate result of these wrongful acts and omissions, OTHEL MOORE, JR.'s next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

116. Defendants' acts and omissions were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of OTHEL MOORE, JR.

WHEREFORE, Plaintiffs pray for judgment against JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA and SEAN REYNOLDS, jointly and severally, for compensatory damages and punitive damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

**COUNT II – 42 USC § 1983 – Eighth Amendment – Cruel and Unusual Punishment**
**(Against JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA and SEAN REYNOLDS)**

117. Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

118. At all relevant times, OTHEL MOORE, JR. had a constitutional right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

119. It is well-settled that "the unnecessary and wanton infliction of pain…constitutes cruel and unusual punishment forbidden by the Eight Amendment." *McLaurin v. Prater*, 30 F.3d 982 (8th Cir. 1994).

120. At all material times, Defendants were acting under the color of state law as agents and employees of the Missouri Department of Corrections.

121.    At all material times, Defendants were wearing official MDOC uniforms and were acting in the course and scope of their duties as MDOC employees at the time they restrained, assaulted, brutalized and killed OTHEL MOORE, JR.

122.    At all relevant times, OTHEL MOORE, JR. was unarmed and not a threat to Defendants.

123.    At all relevant times, Defendants had no factual basis to support a reasonable belief that OTHEL MOORE, JR. posed a threat to his and/or her safety or to the safety of others.

124.    Any reasonable corrections officer would recognize that the repeated, unprovoked use of OC spray, shock gloves, overly restrictive restraints, and the forced application of a spit hood, helmet, and WRAP restraint system – followed by leaving Moore confined in a restraint cart, unattended in the "dry cell" – constituted not only excessive force but also cruel and unusual punishment, in direct violation of the Eighth Amendment. These actions, taken together, demonstrate a deliberate indifference to Moore's well-being, far exceeding the constitutional limits of permissible conduct.

125.    Any reasonable corrections officer would have known that ignoring a detainee's pleas for help and reports of respiratory distress for an extended half-hour manifests not only a blatant disregard for human life but also comprises cruel and unusual punishment that plainly transgresses the protections of the Eighth Amendment

126.    Furthermore, any competent and reasonable officer would clearly understand that failing to provide emergency aid to an individual who poses no threat—especially after applying force that could have fatal consequences—constitutes a direct violation of the U.S. Constitution.

127.    Defendants' conduct was objectively unreasonable.

128. As a direct and proximate result of Defendants' conduct, OTHEL MOORE, JR. sustained serious bodily injuries, emotional distress, pain and suffering, and loss of his young life.

129. As a direct and proximate result of these wrongful acts and omissions, OTHEL MOORE, JR.'s next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

130. Defendants' acts and omissions were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of OTHEL MOORE, JR.

WHEREFORE, Plaintiffs pray for judgment against JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA and SEAN REYNOLDS, jointly and severally, for compensatory damages and punitive damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

### COUNT III – 42 USC § 1983 – Eighth Amendment – Deliberate Indifference
**(Against JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA, SEAN REYNOLDS and JENNIFER LONG)**

131. Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

132. Defendants JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA, SEAN REYNOLDS and JENNIFER LONG exhibited deliberate indifference to the

health and safety of OTHEL MOORE, JR., by failing to take appropriate actions despite knowing the serious risks involved.

133.    Defendants' conscious disregard for MOORE's well-being constituted a clear violation of his Eighth Amendment rights.

134.    Defendants' conduct was objectively unreasonable and violated MOORE's Eighth Amendment right to be free from cruel and unusual punishment.

135.    At all material times, Defendants were acting under the color of state law as agents and employees of MDOC and/or CENTURION OF MISSOURI, LLC, exercising authority granted to them by their official positions.

136.    At all material times, Defendants were acting in the course and scope of their duties as employees of MDOC and/or CENTURION OF MISSOURI, LLC when they restrained, assaulted, brutalized and/or acted with deliberate indifference to the serious medical needs of MOORE.

137.    Defendants knew or should have that their conduct presented a significant and grave risk of harm to MOORE's health, yet they chose to consciously disregard that risk. Their failure to respond to MOORE's medical condition, despite being aware of the serious consequences, demonstrates reckless disregard for his life and safety.

138.    Defendants knew or should have known that MOORE was in severe medical distress and knew they were required to provide immediate medical assistance. Despite their duty, they deliberately chose to do nothing, directly violating MOORE's Eighth Amendment rights. Their inaction amounted to a clear denial of medical care, which exacerbated the harm inflicted upon MOORE.

139.    Despite their awareness of MOORE's deteriorating condition, Defendants not only failed to intervene but intentionally refused to seek and/or provide emergency medical treatment for him. Instead, they ratified and condoned the decision to punish, torture and neglect MOORE, further violating his constitutional rights and contributing to his suffering and eventual death.

140.    Through their deliberate actions and omissions, Defendants were fully aware of and consciously neglected the substantial risk of grave injury they imposed on MOORE. Their blatant and deliberate indifference to his health and safety amounted to a direct and severe infringement of MOORE's constitutionally protected rights under the Eighth Amendment.

141.    Moreover, any reasonable officer would have understood that failing to provide emergency medical aid to an individual who posed no threat – especially after using force that had potentially lethal consequences – violates the U.S. Constitution. This duty to provide care was clear, and the failure to fulfill that duty further underscores the reckless and unlawful conduct of Defendants.

142.    Defendants' conduct was objectively unreasonable.

143.    As a direct and proximate result of Defendants' conduct, OTHEL MOORE, JR. suffered pain, mental anguish, suffering pain, mental anguish, and loss of his young life.

144.    As a direct and proximate result of these wrongful acts and omissions, OTHEL MOORE, JR.'s next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

145.    The acts and omissions of Defendants were intentional, wanton, malicious, reckless, oppressive.

WHEREFORE, Plaintiffs pray for judgment against JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M.

BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA, SEAN REYNOLDS and JENNIFER LONG, jointly and severally, for compensatory damages and punitive damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

**COUNT IV – 42 USC § 1983 – Failure to Intervene**
**(Against JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA and SEAN REYNOLDS)**

146. Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

147. The conduct of the JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA and SEAN REYNOLDS, violated MOORE's constitutional rights. Any reasonable officer in their position would have understood that failing to intervene when fellow officers were using excessive or deadly force violates the U.S. Constitution.

148. Defendants were fully aware that the force being used by their fellow officers against MOORE was excessive and unreasonable given the circumstances. Defendants, by their training and the situation at hand, should have recognized the need to step in and stop the unconstitutional use of force.

149. Each and every Defendant had both the awareness and the ability to intervene but failed to prevent the application of excessive and potentially lethal force by their colleagues. Defendants' deliberate inaction allowed the continued use of unreasonable force against MOORE, directly contributing to the harm he suffered.

150.    Further, any reasonable officer would have known that failing to intervene when excessive or lethal force is being applied by a colleague – and failing to provide timely emergency aid to someone who poses no threat – constitutes a clear violation of the U.S. Constitution. The obligation to act in such situations is well-established within law enforcement standards.

151.    Defendants' failure to intervene allowed the excessive force and medical neglect to continue, prolonging Moore's suffering and ultimately leading to his death, which enhances the severity of their misconduct.

152.    Defendants' actions and omissions were objectively unreasonable under the circumstances. By failing to intervene, Defendants breached their duty to protect MOORE from the unconstitutional actions of their fellow officers.

153.    As a result of Defendants' failure to intervene, MOORE suffered immense physical pain, emotional distress, and ultimately, died as a direct consequence of the excessive force used against him.

154.    As a direct and proximate result of these wrongful acts and omissions, OTHEL MOORE, JR.'s next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

155.    Defendants' acts and omissions were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of OTHEL MOORE, JR.

WHEREFORE, Plaintiffs pray for judgment against JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA and SEAN REYNOLDS, jointly and severally, for

compensatory damages and punitive damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

**COUNT V – 42 U.S.C. § 1983 – Unconstitutional Policy of Deliberate Indifference (*Monell*)**
**(Against TREVOR FOLEY and KELLY MORRISS, in their official capacities, and CENTURION OF MISSOURI, LLC)**

156.    Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

157.    The Missouri Department of Corrections, through Defendants TREVOR FOLEY and KELLY MORRISS, and CENTURION OF MISSOURI, LLC, implemented, enforced, encouraged, and sanctioned a policy, practice, and/or custom of excessive force on inmates, thereby authorizing the officers' use of force on OTHEL MOORE, JR in violation of OTHEL MOORE, JR.'s constitutional rights.

158.    The Missouri Department of Corrections, by and through TREVOR FOLEY and KELLY MORRISS, acted under the color of state law to deprive OTHEL MOORE, JR. of his rights under the U.S. Constitution as described above. Accordingly, TREVOR FOLEY and KELLY MORRISS, in their official capacities, have violated 42 U.S.C. § 1983.

159.    Defendants violated OTHEL MOORE, JR.'s constitutional rights as final policy makers for the Missouri Department of Corrections and JCCC by establishing and maintaining policies, customs, usages, practices and/or procedures that they knew would deprive inmates, including OTHEL MOORE, JR., of their constitutional rights under the Eighth and Fourteenth Amendments.

160.    Specifically, the Missouri Department of Corrections had a policy, practice, or custom of permitting their officers, specifically the Correctional Emergency Response Teams, to use excessive and disproportionate force against inmates without just cause or provocation.

161.    Additionally, Defendants had a policy, pattern, and/or practice of understaffing the JCCC with correctional officers and/or medical and nursing staff. The policy, pattern, and/or practice resulted in regular, systemic understaffing at the JCCC in relevant respects.

162.    Defendants were aware of such systemic understaffing at the jail and further knew that it was deleteriously impacting jail operations, including, but not limited to, by making them unable to adequately and timely assess the medical health and/or needs of detainees who had been subjected to use of force by corrections officers.

163.    The policy, practice, or custom included a failure to adequately train, supervise, and control the actions of their employees and/or agents, which caused a foreseeable and direct violation of the constitutional rights of the inmates under their care, including OTHEL MOORE, JR.

164.    Defendants were aware of and deliberately indifferent to the risks posed by not properly training and supervising their correctional officers and/or medical and nursing staff, which led to a pattern of behavior that was likely to result in the infringement of MOORE's constitutional rights.

165.    Defendants, through their deliberate indifference, directly and proximately caused the violation of OTHEL MOORE, JR.'s constitutional rights by maintaining a policy, practice, or custom that condoned and directly led to the use of excessive force and failure to provide adequate and timely medical care.

166.    The actions and omissions of Defendants, under their policies, practices, or customs, constituted the "moving force" behind the constitutional violations suffered by OTHEL MOORE, JR., including, but not limited to, the use of excessive force, cruel and unusual punishment, and deliberate indifference to OTHEL MOORE, JR.'s serious medical needs.

167.     As a direct and proximate result of Defendants' policies, practices, or customs, OTHEL MOORE, JR. was injured and died as a direct and proximate result of the above policies, practices, and/or customs.

WHEREFORE, Plaintiffs request judgment against Defendants TREVOR FOLEY and KELLY MORRISS, and CENTURION OF MISSOURI, LLC, jointly and severally, for the following:

    a.  Adjudging and declaring that the policies, practices and conduct described above violates the Eighth and Fourteenth Amendments to the United States Constitution.

    b.  The establishment of a comprehensive remedial plan to correct Defendants' unconstitutional policies, training, supervision, and discipline practices.

    c.  Attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT VI - 42 U.S.C. § 1983 – Supervisory Liability**
**(Against JUSTIN DAVISON, CENTURION OF MISSOURI, LLC, and TREVOR FOLEY and KELLY MORRISS, in their individual capacities)**

168.     Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

169.     Defendants JUSTIN DAVISON, CENTURION OF MISSOURI, LLC, TREVOR FOLEY and KELLY MORRISS each had supervisory responsibilities over one or more of the correctional officers and/or medical and nursing staff who participated in OTHEL MOORE, JR.'s death.

170.     Defendants participated in violating OTHEL MOORE, JR.'s rights, directed others to violate them, or, as the person or entity in charge, had knowledge of and acquiesced in his or her subordinates' violations.

171.    As a direct and proximate result of Defendants' actions and omissions, OTHEL MOORE, JR.'s constitutional rights were violated.

WHEREFORE, Plaintiffs pray for judgment against Defendants JUSTIN DAVISON, CENTURION OF MISSOURI, LLC, TREVOR FOLEY and KELLY MORRISS, jointly and severally, for compensatory damages and punitive damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

## COUNT VII - 42 U.S.C. § 1983 – Deliberate Indifference – Failure to Train
### (Against CENTURION OF MISSOURI, LLC, and TREVOR FOLEY and KELLY MORRISS, in their individual capacities)

172.    Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

173.    Defendants CENTURION OF MISSOURI, LLC, TREVOR FOLEY and KELLY MORRISS had a duty to train and instruct correctional officers and/or medical and nursing staff, including, but not limited to, the CERT DEFENDANTS and JENNIFER LONG, in the constitutional limitations on the use of force, the requirement to provide medical care to inmates and duty to intervene.

174.    Defendants, however, failed to properly and adequately train their correctional officers and/or medical and nursing staff in these essential areas of their duties, which directly led to the violation of inmates' constitutional rights, including those of OTHEL MOORE, JR.

175.    Defendants' failure to train their correctional officers and/or medical and nursing staff officers in the constitutional use of force and medical care protocols amounts to deliberate indifference to the rights of inmates like OTHEL MOORE, JR.

176.    Defendants' deliberate indifference is further evidenced by a pattern of similar unconstitutional acts by MDOC CERT officers, which went uncorrected by adequate training or discipline.

177.    Defendants knew or should have known that failing to provide proper training on the appropriate use of force and the urgency of medical care for detainees subjected inmates to a significant risk of harm, including the risk of death.

178.    Despite this knowledge, Defendants acted with deliberate indifference to the rights of inmates by failing to implement and maintain adequate training programs.

179.    As a direct result of Defendants' failure to train their correctional officers and/or medical and nursing staff, OTHEL MOORE, JR. was subjected to excessive force and was denied the necessary medical attention to address his injuries and distress, which ultimately led to his death.

180.    The failure to provide such training represents an official policy, practice, or custom of the Missouri Department of Corrections and CENTURION OF MISSOURI, LLC that directly caused the constitutional violations experienced by OTHEL MOORE, JR.

181.    Had the correctional officers and/or medical and nursing staff been properly trained and supervised, it is more likely than not that the violation of OTHEL MOORE, JR.'s constitutional rights would have been avoided.

182.    As a direct and proximate result of Defendants' deliberate indifference, OTHEL MOORE, JR.'s constitutional rights were violated and Plaintiffs suffered damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants CENTURION OF MISSOURI, LLC, TREVOR FOLEY and KELLY MORRISS, jointly and severally, for

compensatory damages and punitive damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

## COUNT VIII – Wrongful Death
### (Against all Defendants in their individual capacity)

183.    Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

184.    Plaintiffs maintain this action for wrongful death pursuant to R.S.Mo. § 537.080(1).

185.    Defendants' conduct as outlined above resulted in the wrongful death of OTHEL MOORE, JR.

186.    Defendants' conduct exhibited deliberate indifference to OTHER MOORE, JR.'s rights, safety and wellbeing.

187.    As a direct and proximate result of Defendants' conduct, Defendants directly caused and/or contributed to cause OTHEL MOORE JR.'s death.

188.    As a direct and proximate result of the respective negligent acts and/or omissions of Defendants, Defendants directly caused and/or contributed to cause OTHEL MOORE, JR.'s death.

189.    As a direct and proximate result of the negligent acts and/or omissions of Defendants, Defendants caused and/or contributed to cause Plaintiffs to suffer damages, including, but not limited to, pecuniary losses by reason of the death of OTHEL MOORE, JR., funeral expenses, and the loss of the reasonable value of the services, consortium, companionship, comfort instruction, guidance, counsel, training and support, as well as all other damages allowed under R.S.Mo. § 537.090 and/or Missouri law.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, for compensatory damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

**COUNT IX - Negligence**
**(Against all Defendants in their individual capacity)**

190.     Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

191.     As a detainee of Defendants, OTHEL MOORE, JR. was in the custody of Defendants and completely reliant upon Defendants to protect him and provide his medical needs.

192.     Defendants owed a non-delegable duty of reasonable care to OTHEL MOORE, JR. while he in their custody.

193.     Defendants TREVOR FOLEY and KELLY MORRISS possessed a non-delegable duty to supervise and ensure the safety and wellbeing of OTHEL MOORE, JR.

194.     CENTURION OF MISSOURI, LLC assumed a corresponding duty to OTHEL MOORE, JR. when it contracted with the Missouri Department of Corrections to furnish medical care to detainees at JCCC.

195.     Defendants possessed actual knowledge, personally and/or via their employees and agents, that OTHEL MOORE, JR. had been beaten, tortured, and was in need of medical intervention because:

      a.  They knew he had been pepper sprayed multiple times;

      b.  They knew he was improperly restrained in the WRAP system and chained to a cart;

      c.  They knew the spit hood was improperly applied to his face, preventing and/or further obstructing his ability to breathe;

d. They knew he was unable to breathe because he repeatedly vocalized his distress;

e. They knew he had not been decontaminated from the burning OC spray before being placed in the spit hood;

f. They knew that he needed to be assessed for medical care because of his repeated pleas that he was unable to breathe and observed MOORE's critical distress in the "dry cell;" and

g. All other ways that may be discovered throughout the case.

196. Defendants further knew or should have known that OTHEL MOORE, JR. had been beaten, tortured and was in need of medical intervention because:

a. JCCC's video system, which would have been actively monitored, captured OTHEL MOORE, JR. being repeatedly pepper sprayed, forcibly shackled and restrained in the WRAP system and chained to a cart, put in a spit hood and helmet, placed in the "dry cell" and left unattended while not being able to breathe for approximately 30 minutes;

b. MOORE repeatedly vocalized his distress, informing Defendants he could not breathe;

c. Defendants ignored the need decontaminate MOORE from the burning OC spray and further obstructed his breathing by improperly placing a spit hood over his face;

d. Defendants observed MOORE in distress as he pled for help, stating he could not breathe;

e.  MOORE was left alone, unchecked for more than 30 minutes, and was visibly in distress, unresponsive and unable to lift his head;

f.  Defendants know MOORE had not been medically examined after subjecting to force and OC spray for more than 30 minutes after being placed in the "dry cell;" and

g.  All other ways that may be discovered throughout the case.

197.  Defendants breached their duty of care by, among other things:

a.  Carrying out a brutal, violent attack using excessive and unnecessary force;

b.  Ignoring MOORE's struggle to breathe and pleas for help;

c.  Failing to intervene in the attack;

d.  Failing to decontaminate MOORE from OC spray;

e.  Obstructing his breathing by improperly placing a spit hood over his mouth and face;

f.  Failing to provide timely medical care;

g.  Leaving MOORE unattended, restrained to the WRAP cart, in the "dry cell" as he sat dying for more than 30 minutes; and

h.  All other ways that may be discovered throughout the case.

198.  Defendants JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA, SEAN REYNOLDS, and JENNIFER LONG, and other as yet discovered employees under the supervision of MDOC and CENTURION OF MISSOURI, LLC, were at all times acting in furtherance of their job duties and within the course and scope of their employment and/or

agency; therefore, Defendants FOLEY, MORRISS and CENTURION OF MISSOURI, LLC are vicariously liable for their acts.

199.     The employees of CENTURION OF MISSOURI, LLC were at all times acting in furtherance of their job duties within the course and scope of their employment and as agents of the MDOC and CENTURION OF MISSOURI, LLC; therefore, Defendants are vicariously liable for their acts.

200.     Defendants engaged in the preceding conduct with deliberate indifference to OTHER MOORE, JR.'s rights, safety and well-being.

201.     As a direct and proximate result of Defendants' conduct, OTHEL MOORE, JR. to suffered severe physical injuries, extreme pain and suffering, emotional distress, humiliation, mental anguish and death.

202.     As a direct and proximate result of Defendants' conduct, Plaintiffs suffered damages, including, but not limited to, pecuniary losses by reason of the death of OTHEL MOORE, JR., funeral expenses, and the loss of the reasonable value of the services, consortium, companionship, comfort instruction, guidance, counsel, training and support, as well as all other damages allowed under R.S.Mo. § 537.090 and/or Missouri law.

WHEREFORE, Plaintiffs pray for judgment against Defendants for compensatory damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

## COUNT X - Battery
**(Against JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER and BRYANNE M. BRADSHAW)**

203.     Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

204.    Defendants JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER and BRYANNE M. BRADSHAW, without consent or privilege, respectively, intended to cause harmful or offensive contact with OTHEL MOORE, JR. by, without cause or provocation, unprovoked and repeated use of OC spray, the deployment of shock gloves, the imposition of excessively constrictive prone restraints, the application of a spit hood, helmet and leg wrap, and forcibly placing OTHEL MOORE, JR. in a restraint chair, among other things, causing OTHEL MOORE, JR. to suffer extreme physical and emotional injuries, and death.

205.    Defendants used more force than was necessary, and thus, used unreasonable, excessive force.

206.    Defendants' actions were neither justified nor excused by law or the circumstances at hand.

207.    Defendants' conduct was intentional and demonstrated a deliberate indifference to OTHEL MOORE, JR.'s safety and wellbeing.

208.    Defendants' conduct was willfully wrong in that Defendants used excessive force upon OTHEL MOORE, JR. when he presented no threat of death or serious injury to Defendants.

209.    At no point did OTHEL MOORE, JR.'s actions justify Defendants' conduct in the use of repeated OC spray, shock gloves, covering his face with a spit hood and helmet while he gasped for air, throwing him onto the concrete floor, or subjecting him to extremely restrictive restraints were necessary measures for their protection or that of others. Forcingly restraining him into the WRAP system, and subsequently neglecting his pleas for help as he struggled to breathe and leaving him unattended for more than 30 minutes in the "dry cell," directly led to OTHEL MOORE, JR.'s physical and psychological trauma, and ultimately his death, without any legitimate concern for preventing imminent harm.

210.     At all pertinent times, Defendants were acting under color of law and in the course and scope of their employment.

211.     By these actions, Defendants acted with malice, causing OTHEL MOORE, JR. to suffer physical and emotional injuries, and ultimately death.

212.     As a direct and proximate result of Defendants' acts, OTHEL MOORE, JR. suffered severe physical injuries, extreme pain and suffering, emotional distress, humiliation, mental anguish, and ultimately death.

213.     As a direct and proximate result of Defendants' conduct, Defendants caused and/or contributed to cause Plaintiffs to suffer damages, including, but not limited to, pecuniary losses by reason of the death of OTHEL MOORE, JR., funeral expenses, and the loss of the reasonable value of the services, consortium, companionship, comfort instruction, guidance, counsel, training and support, as well as all other damages allowed under R.S.Mo. § 537.090 and/or Missouri law.

WHEREFORE, Plaintiffs pray for judgment against Defendants JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER and BRYANNE M. BRADSHAW, jointly and severally, for compensatory damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

## COUNT XI - Assault
### (Against JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER and BRYANNE M. BRADSHAW)

214.     Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

215.     Defendants JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER and BRYANNE M. BRADSHAW, without consent or privilege, intended to cause and did cause harmful or offensive contact with OTHEL MOORE, JR. by

wantonly using OC spray without provocation, shock gloves, covering his face with a spit hood and helmet while he gasped for air, throwing him onto the concrete floor, subjecting him to extremely restrictive restraints, the additional application of a leg wrap, and forcing him into a restraint cart, causing OTHEL MOORE, JR. to suffer physical and emotional injuries.

216.    Defendants knowingly placed OTHEL MOORE, JR. in apprehension of imminent harmful contact without his consent and with malice, when they aggressively approached him and employed the use of OC spray and physical force in a threatening manner.

217.    Defendants' actions were neither justified nor excused by law or the circumstances at hand.

218.    Defendants' conduct was intentional and demonstrated a deliberate indifference to OTHEL MOORE, JR.'s safety and wellbeing.

219.    Defendants' conduct was willfully wrong in that Defendants used excessive force upon OTHEL MOORE, JR. when he presented no threat of death or serious injury to Defendants.

220.    At no point did OTHEL MOORE, JR.'s actions justify Defendants' conduct in the use of repeated OC spray, shock gloves, covering his face with a spit hood and helmet while he gasped for air, throwing him onto the concrete floor, or subjecting him to extremely restrictive restraints were necessary measures for their protection or that of others. Forcingly restraining him into the WRAP system, and subsequently neglecting his pleas for help as he struggled to breathe and leaving him unattended for more than 30 minutes in the "dry cell," directly led to OTHEL MOORE, JR.'s physical and psychological trauma, and ultimately his death, without any legitimate concern for preventing imminent harm.

221.    At all pertinent times, Defendants were acting under color of law and in the course and scope of their employment.

222.     By these actions, Defendants acted with malice, causing OTHEL MOORE, JR. to suffer physical and emotional injuries, and ultimately death, causing OTHEL MOORE, JR. to suffer physical and emotional injuries, and ultimately death.

223.     As a direct and proximate result of Defendants' acts, Defendants caused and/or contributed to cause OTHEL MOORE, JR. to suffer severe physical injuries, extreme pain and suffering, emotional distress, humiliation, mental anguish, and ultimately death.

224.     As a direct and proximate result of the Defendants' conduct, Defendants caused and/or contributed to cause Plaintiffs to suffer damages, including, but not limited to, pecuniary losses by reason of the death of OTHEL MOORE, JR., funeral expenses, and the loss of the reasonable value of the services, consortium, companionship, comfort instruction, guidance, counsel, training and support, as well as all other damages allowed under R.S.Mo. § 537.090 and/or Missouri law.

WHEREFORE, Plaintiffs pray for judgment against Defendants JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER and BRYANNE M. BRADSHAW, jointly and severally, for compensatory damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

### COUNT XII – Intentional Infliction of Emotional Distress
**(Against JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA, SEAN REYNOLDS and JENNIFER LONG)**

225.     Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

226.     Defendants JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN

WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA, SEAN REYNOLDS and JENNIFER LONG's conduct was purposeful or reckless and intended to cause distress.

227.   Defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

228.   Defendants' actions were the direct and proximate cause of the emotional distress suffered by OTHEL MOORE, JR., which was severe, and no reasonable person should be expected to endure it.

229.   At all pertinent times, Defendants were acting under color of law and in the course and scope of their employment.

230.   As a direct and proximate result of the Defendants' conduct, OTHEL MOORE, JR. suffered severe physical injuries, extreme pain and suffering, emotional distress, humiliation, and ultimately death.

231.   As a direct and proximate result of Defendants' conduct, Plaintiffs suffered damages, including, but not limited to, pecuniary losses by reason of the death of OTHEL MOORE, JR., funeral expenses, and the loss of the reasonable value of the services, consortium, companionship, comfort instruction, guidance, counsel, training and support, as well as all other damages allowed under R.S.Mo. § 537.090 and/or Missouri law.

WHEREFORE, Plaintiffs pray for judgment against JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA, SEAN REYNOLDS and JENNIFER LONG, jointly and

severally, for compensatory damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

### COUNT XIII – Negligent Infliction of Emotional Distress
**(Against JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA, SEAN REYNOLDS and JENNIFER LONG)**

232.    Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

233.    Defendants owed a duty to OTHEL MOORE, JR. to behave in a reasonable manner free from the use of excessive force and deliberate indifference to his medical needs.

234.    Defendants acted excessively and with deliberate indifference and, therefore, breached their duty of care to OTHEL MOORE, JR.

235.    Defendants' breach caused OTHEL MOORE, JR. to suffer extreme emotional distress until his death.

236.    At all pertinent times, Defendants were acting under color of law and in the course and scope of their employment.

237.    As a direct and proximate result of Defendants' conduct, OTHEL MOORE, JR. suffered severe physical injuries, extreme pain and suffering, emotional distress, humiliation, mental anguish, and ultimately death.

238.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered damages, including, but not limited to, pecuniary losses by reason of the death of OTHEL MOORE, JR., funeral expenses, and the loss of the reasonable value of the services, consortium, companionship, comfort instruction, guidance, counsel, training and support, as well as all other damages allowed under R.S.Mo. § 537.090 and/or Missouri law.

WHEREFORE, Plaintiffs pray for judgment against Defendants JUSTIN DAVISON, JUSTIN M. LEGGINS, JACOB A. CASE, AARON C. BROWN, GREGORY H. VARNER, BRYANNE M. BRADSHAW, RYAN WILLIAMS, WILLIAM WELLS, CRAIG GLATCZAK, ZACHARY KOPP, ONYEWUCHI NKWOCHA, SEAN REYNOLDS and JENNIFER LONG, jointly and severally, for compensatory damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

## COUNT XIV – Negligent Training/Supervision
**(Against JUSTIN DAVISON, CENTURION OF MISSOURI, LLC, TREVOR FOLEY and KELLY MORRISS in their individual capacities)**

239.    Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

240.    Defendants JUSTIN DAVISON, CENTURION OF MISSOURI, LLC, TREVOR FOLEY and KELLY MORRISS had a duty to train and supervise their employees in the proper methods of use of force and provision of medical care.

241.    Defendants failed to adequately train, supervise, and control their employees, leading to foreseeable violations of inmates' constitutional rights.

242.    Defendants knew or should have known that the failure to train and supervise their employees and/or agents on the appropriate use of force and the necessity of timely medical care, especially after a use of force incident, would result in the commission of excessive force, injury, and death.

243.    Defendants breached their duty of care by negligently failing to provide adequate training and supervision to their employees concerning the use of force and the necessity of timely medical intervention for inmates.

244. As a direct and proximate result of Defendants' conduct, OTHEL MOORE, JR. suffered severe physical injuries, extreme pain and suffering, emotional distress, humiliation, mental anguish, and ultimately death.

245. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered damages, including, but not limited to, pecuniary losses by reason of the death of OTHEL MOORE, JR., funeral expenses, and the loss of the reasonable value of the services, consortium, companionship, comfort instruction, guidance, counsel, training and support, as well as all other damages allowed under R.S.Mo. § 537.090 and/or Missouri law.

WHEREFORE, Plaintiffs pray for judgment against Defendants JUSTIN DAVISON, CENTURION OF MISSOURI, LLC, TREVOR FOLEY and KELLY MORRISS, jointly and severally, for compensatory damages, costs, attorneys' fees, interest, and other relief the Court deems fair and just.

## COUNT XV – Negligent Retention of Private Contractor
### (Against TREVOR FOLEY and KELLY MORRISS, in their individual capacities)

246. Plaintiffs set forth the allegations of all preceding paragraphs as if fully set forth herein.

247. A correctional center owes inmates a non-delegable duty to provide them medical care and keep them safe.

248. Defendants TREVOR FOLEY and KELLY MORRISS retained CENTURION OF MISSOURI, LLC to provide medical care to inmates.

249. Defendant CENTURION OF MISSOURI, LLC operated as an agent of the Missouri Department of Corrections.

250. CENTURION OF MISSOURI, LLC was not competent or careful in the provision of medical services to OTHEL MOORE, JR.

251. CENTURION OF MISSOURI, LLC's substandard care at JCCC and other jails has led to increasingly routine deaths of incarcerated persons and unconstitutionally-inadequate medical care.

252. CENTURION OF MISSOURI, LLC's care provided to OTHEL MOORE, JR. involved work that carried a risk of harm to him unless it was skillfully, carefully, and timely provided.

253. CENTURION OF MISSOURI, LLC's care provided to OTHEL MOORE, JR. was pursuant to a duty owed by Defendants TREVOR FOLEY and KELLY MORRISS to him.

254. Defendants TREVOR FOLEY and KELLY MORRISS failed to exercise reasonable care in retaining CENTURION OF MISSOURI, LLC to carry out medical services for OTHEL MOORE, JR.

255. As a direct and proximate cause of Defendants' conduct, OTHEL MOORE, JR. suffered severe physical injuries, extreme pain and suffering, emotional distress, humiliation, mental anguish, and ultimately death.

256. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered damages, including, but not limited to, pecuniary losses by reason of the death of OTHEL MOORE, JR., funeral expenses, and the loss of the reasonable value of the services, consortium, companionship, comfort instruction, guidance, counsel, training and support, as well as all other damages allowed under R.S.Mo. § 537.090 and/or Missouri law.

## **PRAYER FOR RELIEF**

Plaintiffs DORIS ANN SCOTT and ORIEL MOORE respectfully request the following relief from the Court:

      a.    Compensatory damages against all Defendants in an amount to be determined by a jury;

b.      Punitive damages on all 42 U.S.C. § 1983 claims against all Defendants (except for TREVOR FOLEY and KELLY MORRISS, in their official capacities) in an amount to be determined by a jury;

c.      Pre-judgment and post-judgment interest as allowable by law and as ordered by the Court;

d.      Attorney fees' as allowable by law and as ordered by the Court;

e.      Reasonable costs; and

f.      Such other relief that the Court deems just and equitable.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all claims.

*Respectfully submitted,*

/s/ *Andrew M. Stroth*
Andrew M. Stroth
ACTION INJURY LAW GROUP
22 W. Washington Street, #1600
Chicago, IL 60602
P. (844) 878-4529
astroth@actioninjurylawgroup.com

/s/ *Steven Hart*
Steven Hart
James Ormond
HART MCLAUGHLIN & ELDRIDGE, LLC
22 W. Washington Street, #1600
Chicago, IL 60602
P. (312) 955-0545
shart@hmelegal.com
jormond@hmelegal.com

/s/ *Larry Disparti*
Larry Disparti
DISPARTI LAW, LLC
121 W. Wacker Drive, Suite 2300
Chicago, IL  60601
P: (312) 506-5511
ldisparti@dispartilaw.com

/s/*Ben Stelter-Embry*

Ben Stelter-Embry     MO #65404

EMBRY LAW, LLC

4700 Belleview, Suite 300

Kansas City, MO 64112

P. (913) 231-9396

ben@embry-law.com