**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| **DORIS ANN SCOTT and ORIEL MOORE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:24-CV-04107-MDH** |
| | ) | |
| **CENTURION OF MISSOURI, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN OPPOSITION TO
<u>DEFENDANT BRYANNE BRADSHAW'S MOTION TO STAY</u>**

## **TABLE OF CONTENTS**

I.     INTRODUCTION     5

II.    LEGAL STANDARD     5

III.    LEGAL ARGUMENT     6

     A.  A stay is inappropriate because Defendant has already waived her
Fifth Amendment privilege.     6

     B.  Even if Defendant has not waived her Fifth Amendment privilege
entirely, Plaintiffs should be allowed to conduct discovery regarding
topics for which she has already provided testimony.     9

     C.  Even if Defendant has not waived her Fifth Amendment privilege,
this matter does not meet the "extraordinary" requirements of a stay.     10

           1.    Plaintiff will suffer hardship from potential delays.     11

           2.    There is minimal prejudice to Defendant in proceeding
with discovery.     14

           3.    Allowing discovery to proceed will ensure efficiency.     16

           4.    Interests of persons other than the parties and public interest in
the outcome of these proceedings weighs against a stay.     17

     D.  If the Court finds that Defendant merits the extraordinary remedy
of a stay, the Court should limit the stay.     18

IV.    CONCLUSION     19

## **TABLE OF AUTHORITIES**

**Cases**

*Abrams v. Tuberville*, No. 3:12cv177-MHT, 2013 WL 842710 (M.D. Ala. Mar. 6, 2013)........... 15

*Aldridge v. City of St. Louis, Missouri*, No. 4:18-CV-1677 CAS, 2020 WL 223928 (E.D. Mo. Jan. 15, 2020) ...................................................................................................5, 6, 11, 12, 14, 17, 18

*Valentin v. Richardson*, 110 F.R.D. 622 (D. Mass. 1986) ............................................................ 16

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ................................................... 17

*Brown v. U.S.*, 356 U.S. 148 (1958)................................................................................................. 9

*Capitol Products Corp. v. Hernon,* 457 F.2d 541 (8th Cir. 1972)................................................... 7

*Cerro Gordo Charity v. Fireman's Fund American Life Ins. Co*., 819 F.2d 1471 (8th Cir. 1987).. 6, 15

*Cole v. Strauss*, No. 2:13-cv-04200-NKL, 2014 WL 4055787 (W.D. Mo. Aug. 15, 2014)..........11

*Doe v. St. Clair Cty.*, No. 18-CV-380-SMY-SCW, 2018 WL 3475459 (S.D. Ill. July 19, 2018) . 13

*Fidelity Nat. Title Inc. Co. of New York v. National Title Resources Corp.*, 980 F.Supp. 1022 (D. Minn. 1997)....................................................................................................................11, 15, 16

*Garner v. United States*, 424 U.S. 648 (1976). ............................................................................... 8

*General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204 (8th Cir. 1973) .................................... 6

*Gordon v. FDIC*, 427 F.2d 578 (D.C. Cir. 1970) ......................................................................... 12

*In re CFS-Related Sec. Fraud Litig.*, 256 F.Supp.2d 1227 (N.D. Okla. 2003)............................. 16

*In re Lernout & Hauspie Sec. Litig.*, Civ. A. 00-11589-PBS, 2003 WL 23341390 (D. Mass. June 12, 2003) ................................................................................................................................. 13

*Int'l. Bus. Machs. Corp. v. Brown*, 857 F. Supp. 1884 (C.D. Cal. 1994) ..................................... 14

*Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995) ........................................... 10

*Koester v. American Republic Invs., Inc.*, 11 F.3d 818 (8th Cir. 1993)..........................6, 10, 11, 15

*Landis v. N. Am. Co.* 299 U.S. 248 (1936)................................................................................... 13

*Liggins v. Cohen*, 4:16-CV-00413-AGF, slip op. (E.D.Mo. March 8, 2018)................ 5, 13, 16, 18

*Minnesota v. Murphy*, 465 U.S. 420 (1984)................................................................................... 8

*Mitchell v. United States*, 526 U.S. 314 (1999)..................................................................... 8, 9, 10

*Morris Kirschman & Co., L.L.C. v. Hartford Fire Ins. Co.*, Civ. A. No. 03-1743, 2004 WL 1373277 (E.D. La. June 16, 2004) ............................................................................................ 10

*Paine, Webber, Jackson, Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F.Supp. 1118 (S.D.N.Y. 1980) ...................................................................................................................................................... 15

*RightCHOICE Managed Care, Inc v. Hospital Partners, Inc.*, No. 5:18-cv-06037-DGK, 2019 WL 418117 (W.D. Mo. Feb. 1, 2019) .............................................................................................. 7

*Rogers v. United States*, 340 U.S. 367 (1951)..................................................................... 7, 8, 10

*Ruszczyk v. Noor*, 2018 WL 4759838 (D. Minn. Oct. 2, 2018.................................................... 17

*S.E.C. v. Brown*, No. 06-1213, 2007 WL 4192000 (D. Minn. Dec. 17, 2010)........................11, 12

*Standard Sanitary Mfg. v. United States*, 226 U.S. 20 (1912) ...................................................... 5

*State Farm Mut. Auto. Ins. Co. v. Healthcare Chiropractic Clinic, Inc.*, Case No. 15-cv-2527, 2016 WL 9307608 (D. Minn. Apr. 26, 2016)............................................................................ 16

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573 (S.D.N.Y. 2001)................. 15, 16

*United States v. Jenkins*, 785 F.2d 1387 (9th Cir. 1986) .............................................................. 8

*Wedgeworth v. Fireboard Corp.*, 706 F.2d 541 (5th Cir. 1983) .................................................. 13

*White v. Feaman*, No. 4:10-cv-518-SRC (E.D. Mo. Nov. 2018) ................................................. 18

*Wilson v. Olathe Bank*, No. Civ. A. 97-2458-KHV, 1998 WL 184470 (D. Kan. Mar. 2, 1998).... 15

**Rules**

Fed. R. Civ. P. 1..................................................................................................................... 12

**Constitutional Provisions**

U.S. Const. Amend. V............................................................................................................ 6

## I.  INTRODUCTION

Defendant Bryanne Bradshaw has been charged with felony murder and accessory assault for her involvement in the brutal killing of Othel Moore, Jr. at the Jefferson City Correctional Center on December 8, 2023.[1] Ms. Bradshaw now seeks an extraordinary remedy – a complete, indefinite stay of this civil case – arguing that proceeding would force her to choose between invoking her Fifth Amendment rights and defending herself in this litigation. However, established precedent and the equities of this case make clear that such a stay is unwarranted. Justice requires that this litigation proceed expeditiously, ensuring accountability and protecting Plaintiffs' constitutional rights.

## II.  LEGAL STANDARD

Ms. Bradshaw is not entitled to a stay or continuance of this civil litigation merely because criminal charges also are pending against her. It is well established that parallel civil and criminal proceedings can be brought and pursued against the same defendant "simultaneously or successively." *Standard Sanitary Mfg. v. United States,* 226 U.S. 20, 52, (1912).

A stay of a civil case to permit conclusion of a related criminal prosecution is an "extraordinary remedy." See *Aldridge v. City of St. Louis, Missouri*, No. 4:18-CV-1677 CAS, 2020 WL 223928, at *3 (E.D. Mo. Jan. 15, 2020) (citing *Liggins v. Cohen*, 4:16-CV-00413-AGF, slip op. at 3 (E.D.Mo. March 8, 2018).  Consequently, the Court must "'assess and balance the nature and substantiality of the injustices claimed on either side'" when deciding to stay civil litigation in

---

[1] Defendants Justin Leggins and Jacob Case have also filed a motion to stay, which is pending before this Court. (ECF 56). In her motion, Ms. Bradshaw erroneously states that Defendant Aaron Brown, who was also charged along with Defendants Bradshaw, Leggins and Case, has also filed a motion to stay. However, just to clarify, the charges against Mr. Brown were dismissed, and he was not included as a party to the previously filed joint motion to stay – the only other motion to stay filed in this case. (ECF 56).

deference to parallel criminal proceedings. *Id.* (citing *General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1213 (8th Cir. 1973)).

"Justice must be done in both criminal and civil litigation. The rights of the defendant in a criminal case must, of course, be protected. But this does not mandate a complete disregard for rights of civil litigants." *Id.* While a stay is sometimes warranted, "a civil defendant cannot hide behind a blanket invocation of the Fifth Amendment privilege." *Id.* (citing *Koester v. American Republic Invs., Inc.*, 11 F.3d 818, 823 (8th Cir. 1993). "It is thus permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege. It is also permissible for the trier of fact to draw an adverse inference from the invocation of the Fifth Amendment in the civil proceeding, so long as silence alone is not the sole basis for an adverse decision against one who refuses to testify." *Id.*

As demonstrated below, Ms. Bradshaw should not be allowed to use her pending criminal charges as a shield to obstruct the timely resolution of Plaintiffs' claims or be permitted to evade accountability in this critical civil litigation.[2]

## III.    LEGAL ARGUMENT

### A.    A stay is inappropriate because Defendant has already waived her Fifth Amendment privilege.

The Fifth Amendment provides that "[n]o person … shall be compelled in any criminal case to be a witness against [her]self." U.S. Const. Amend. V. Although its text specifically applies to criminal proceedings, courts have long held that the Fifth Amendment privilege against self-incrimination extends to civil litigation. *Cerro Gordo Charity v. Fireman's Fund American Life Ins. Co.*, 819 F.2d 1471, 1480 (8th Cir. 1987).

---

[2] Plaintiffs incorporate herein by reference the arguments asserted in their Memorandum in Opposition to Defendants Leggins and Case's Joint Motion to Stay. (ECF 68).

Importantly, courts evaluate Fifth Amendment claims on a question-by-question basis. *RightCHOICE Managed Care, Inc v. Hospital Partners, Inc.*, No. 5:18-cv-06037-DGK, 2019 WL 418117, at *4 (W.D. Mo. Feb. 1, 2019). ("[T]he Court can make a question-by-question judgment on the privilege's applicability."). This principle precludes broad or blanket invocations of the privilege. *Capitol Products Corp. v. Hernon,* 457 F.2d 541, 542-543 (8th Cir. 1972). Rather, in a civil case, "[t]he privilege must be specifically claimed on a particular question and the matter submitted to the court for its determination as to the validity of the claim." *Id.* The court, then, "must determine whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Id.* (internal citations omitted).

Despite these clear mandates, like Defendants Leggins and Case, Ms. Bradshaw seeks to stay this case in its entirety based solely on the speculative assertion that she *may* invoke the Fifth Amendment at some point during discovery. This attempt is contrary to established precedent and her request for a stay can be denied on this basis alone.

Furthermore, like Defendants Leggins and Case, Ms. Bradshaw has already unequivocally waived her Fifth Amendment privilege against self-incrimination by voluntarily providing testimony to the Missouri Department of Corrections' ("MDOC") investigators during its internal investigation and to Cole County Sheriff's Department ("CCSD") investigators during the criminal investigation into the death of Othel Moore, Jr.[3] The Fifth Amendment's protections are not absolute; they can be waived when individuals voluntarily offer statements in an investigation or proceeding. *Rogers v. United States*, 340 U.S. 367 (1951). By participating in two separate investigations and answering questions directly related to the underlying incident, Ms. Bradshaw made a deliberate, knowing, and intentional decision to relinquish her privilege.

---

[3] *See* Exhibit A.

7

This waiver is significant. The U.S. Supreme Court has consistently held that the Fifth Amendment privilege "is deemed waived unless invoked." *Rogers*, 340 U.S. at 371-73. An individual may inadvertently lose the privilege without a formal, knowing, and intelligent waiver. *United States v. Jenkins*, 785 F.2d 1387, 1393 (9th Cir. 1986); *Garner v. United States*, 424 U.S. 648, 654 n.9 (1976). Simply by "testifying voluntarily in matters which may incriminate [the individual]," the privilege is waived. *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984).

Here, like Defendants Leggins and Case, there is no evidence that Ms. Bradshaw was coerced or compelled to provide statements under circumstances that might invalidate this waiver. Instead, she actively and willfully participated in two investigations – one internal and one criminal – and offered substantive testimony about matters central to this litigation. Ms. Bradshaw's statements to the Cole County Sheriff's Department are particularly consequential. Courts have repeatedly held that voluntary cooperation with law enforcement constitutes a waiver of the Fifth Amendment privilege as to the topics discussed. *Minnesota*, *supra*. Allowing Defendants to assert the privilege now, after voluntarily providing testimony, would contradict Supreme Court guidance: "[a] witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and the integrity of the factual inquiry." *Mitchell v. United States*, 526 U.S. 314, 322 (1999). Indeed, "a contrary rule 'would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony.'" *Id.*, quoting *Rogers*, 340 U.S. at 371-73.

Ms. Bradshaw, by voluntarily speaking to investigators, knowingly chose to speak despite the potential consequences. Her subsequent *potential* invocation of the Fifth Amendment in this civil case cannot shield her from accountability regarding the same subject matter she already addressed with law enforcement. *Rogers*, 340 U.S. at 373, 374, n.16. Plaintiffs therefore should be

8

allowed to question Ms. Bradshaw about these topics and pursue relevant discovery. The subject matter of the prior investigations overlaps entirely with the claims at issue in this litigation, and any attempt by Ms. Bradshaw to invoke the Fifth Amendment now would result in significant prejudice to Plaintiffs.

Furthermore, equity demands a finding of waiver. Ms. Bradshaw cannot selectively disclose information when it suits her interests during prior investigations and then invoke the Fifth Amendment to obstruct discovery in this litigation. *Mitchell*, 526 U.S. at 322. Such legal tactics undermine the integrity of the judicial process and deprive Plaintiffs of critical evidence necessary to advance their claims. The Court should not permit Ms. Bradshaw to hide behind the Fifth Amendment after knowingly and voluntarily providing testimony to both the DOC and Cole County Sheriff's Department investigators.

Allowing discovery to proceed is not only consistent with Fifth Amendment jurisprudence but also essential to preserving Plaintiffs' right to a fair and efficient resolution of their claims. To this end, Ms. Bradshaw's motion should be denied.

> **B.** **Even if Defendant has not waived her Fifth Amendment privilege entirely, Plaintiffs should be allowed to conduct discovery regarding topics for which she has already provided testimony.**

At a minimum, Plaintiffs should be allowed to ask Ms. Bradshaw about topics or subjects for which she has already voluntarily provided testimony to the MDOC and CCSD. Where a party voluntarily testifies, the Fifth Amendment privilege is waived with respect to the matters about which he or she testifies. *Brown v. U.S.*, 356 U.S. 148, 155-57 (1958) (a party cannot "take the stand to testify in her own behalf and also claim the right to be free from cross-examination on matters raised by her own testimony on direct examination").

9

Here, Ms. Bradshaw – along with Defendants Leggins and Case – clearly waived her Fifth Amendment privilege regarding the subject matter of her prior statements. *Morris Kirschman & Co., L.L.C. v. Hartford Fire Ins. Co.,* Civ. A. No. 03-1743, 2004 WL 1373277, at *3 (E.D. La. June 16, 2004) (internal citations omitted) ("One instance of waiver is when a witness answers a question without asserting the privilege. The privilege is waived as to that particular question."). Furthermore, for every *subject* Ms. Bradshaw testified about, she waived the privilege as to any *details* relating to that subject. See *Rogers*, 340 U.S. at 373 ("Disclosure of a fact waives the privilege as to details.").

To permit Ms. Bradshaw to invoke the Fifth Amendment now, despite her prior voluntary testimony, would deny Plaintiffs access to critical evidence and obstruct the discovery process. As noted above, "[a] witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and the integrity of the factual inquiry." *Mitchell*, 526 U.S. at 322. Accordingly, this Court should require Ms. Bradshaw to answer questions concerning the topics and subjects she has previously addressed in her statements to the MDOC and the Cole County Sheriff's Department.

### C. Even if Defendant has not waived her Fifth Amendment privilege, this matter does not meet the "extraordinary" requirements for a stay.

To warrant a stay, a "defendant must make a strong showing either that the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege, or that the two trials will so overlap that effective defense of both is impossible." *Koester,* 11 F.3d at 823.

This is a high bar. Consequently, a defendant enjoys no "absolute right to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995). Accordingly, courts in this circuit

10

routinely deny requests for stays of civil actions in favor of criminal ones. *See, e.g., Koester*, 11 F.3d at 823 (affirming denial of civil-action stay despite indictment of defendant); *Gen. Dynamics Corp.*, 481 F.2d at 1212-13 (no error by trial court in refusing protective order "postponing civil discovery until all criminal proceedings had terminated"); *Cole v. Strauss*, No. 2:13-cv-04200-NKL, 2014 WL 4055787, at *9-11 (W.D. Mo. Aug. 15, 2014) (affirming order denying motion to stay bankruptcy adversary proceeding pending conclusion of debtor's criminal proceedings); *S.E.C. v. Brown*, No. 06-1213, 2007 WL 4192000, at *1-4 (D. Minn. Dec. 17, 2010) (denying motion to stay case); *Fidelity Nat. Title Inc. Co. of New York v. National Title Resources Corp.*, 980 F.Supp. 1022 (D. Minn. 1997) (denying motion to stay).

"The Eighth Circuit has not specified a set of factors to analyze whether a stay is necessary in light of parallel criminal proceedings." *Aldridge*, at *3. However, to aid in determining whether to stay a civil action pending resolution of a related criminal case, courts have analyzed a number of factors, including: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it and the potential prejudice to plaintiffs is a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Id.*, at *4. Courts also consider the extent to which the issues in the criminal case overlap with the civil case – i.e., the "interrelationship" noted in *Koester* – as well as the status of the criminal proceedings. *Brown*, 2007 WL 4191998, at *1. When these factors are analyzed here, it becomes clear that a stay is unwarranted.

### 1. Plaintiffs will suffer hardship from potential delays.

Plaintiffs are entitled to a "just, speedy, and inexpensive determination" of their case. Fed. R. Civ. P. 1. Granting a stay would unjustly deny Plaintiffs the prompt resolution they deserve and severely prejudice their ability to pursue important constitutional claims. As the adage warns, "justice delayed is justice denied."

Despite this, Ms. Bradshaw dismisses Plaintiffs' interests in proceeding and argues that no prejudice would result from a stay. However, courts have found that plaintiffs have a legitimate interest in the expeditious resolution of their cases. *See, e.g., Aldridge*, 2020 WL 223928, at *3; (recognizing plaintiff's "interest in proceeding expedition resolution of this case" when denying a motion to stay in part). Indeed, "[t]he overall interest of the courts that justice be done may very well require that the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied)." *Gordon v. FDIC*, 427 F.2d 578, 580 (D.C. Cir. 1970). This interest should not be so easily dismissed. *See Brown*, 2007 WL 4192000, at *2 ("[I]t would stultify enforcement of federal law…to defer civil proceedings pending the outcome of a criminal trial.")

By any measure, Plaintiffs have a compelling interest in the prompt resolution of their case, which seeks to vindicate vital constitutional rights and uncover the full scope of Defendant's actions before, during, and after the fatal incident involving Othel Moore, Jr. – actions for which she has already provided testimony to MDOC and CCSD. Any delay in conducting this critical discovery would unfairly prejudice Plaintiffs, who have already endured significant harm as a result of Defendant's misconduct.

Like the defendant in *Aldridge*, Ms. Bradshaw argues that Plaintiffs' claims will endure beyond the resolution of criminal proceedings, but this assertion ignores the significant prejudice a stay would impose. Criminal proceedings involving Ms. Bradshaw – as well as Defendants Leggins and Case – could stretch on for years, with adverse outcomes likely resulting in appeals.

During that time, these Defendants would undoubtedly continue to invoke their Fifth Amendment privilege, further stalling discovery. As courts have recognized, the "unpredictable nature of criminal proceedings" risks depriving plaintiffs of access to critical evidence necessary for their claims. *Doe v. St. Clair Cty.*, No. 18-CV-380-SMY-SCW, 2018 WL 3475459, at *2 (S.D. Ill. July 19, 2018). This is especially true given that Ms. Bradshaw's motion, like the motion filed by Defendants Leggins and Case, is not narrowly tailored to a specific timeframe. Indeed, what Ms. Bradshaw asks of this Court is an *indefinite* stay. This alone provides a basis to deny the motion. *See, e.g., Landis v. N. Am. Co.* 299 U.S. 248, 255 (1936) (noting it may be an abuse of discretion of grant stay of indefinite duration); *Wedgeworth v. Fireboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) ("[B]efore granting a stay pending the resolution of the other case, in light of the principle that stay order will be reversed when they are found to be immoderate or of an indefinite duration."); *In re Lernout & Hauspie Sec. Litig.*, Civ. A. 00-11589-PBS, 2003 WL 23341390, at *2 (D. Mass. June 12, 2003) ("[A]lthough this Court has discretionary power to issue a stay, it is well-established that such a stay should not be for an indefinite period of time.").

The *Liggins* case is instructive. There, Liggins asserted an excessive force claim against a St. Louis Metropolitan police officer who was under indictment and sought an indefinite stay pending final resolution of the pending state criminal proceedings on the same basis as Defendants Bradshaw, Leggins and Case: the criminal prosecution and the civil suit arose from the same facts and the police officer believed it was likely he would invoke his Fifth Amendment privileges.

After the district court initially granted a stay, the *Liggins* court eventually lifted the stay, finding that it was no longer required. In making its assessment regarding the first factor, the *Liggins* court cited the fact that at the time it lifted the stay, the defendant officer had been under investigation for two years. *Id.*, at *4. The *Liggins* court found that "such a lengthy stay has already

prejudiced Plaintiff's interest in proceeding expeditiously, and continuing the stay indefinitely will only compound such prejudice." *Id.* The court properly applied this factor through the lens of prejudice to the *plaintiff* not the defendant. The allegation at issue in the *instant* matter occurred more than a year ago. The Plaintiffs in this case have the exact same interest in "proceeding expeditiously."

Similarly, in *Aldridge*, which also involved excessive force claims and related criminal proceedings against a St. Louis police officer, the district court found that the plaintiff had a "legitimate interest in the expeditious resolution" of the case and concluded that "plaintiff will suffer prejudice and unnecessary delay by a stay of all proceedings in this case, even though he may benefit from the resolution of or discovery obtained in the criminal case against [the defendant officer]." *Aldridge*, at *4.

Likewise, this Court should reject Ms. Bradshaw's request for a stay. Plaintiffs' constitutional claims deserve to be heard, and any further postponement would unjustly compromise their pursuit of accountability and closure.

### 2. There is minimal prejudice to Defendant in proceeding with discovery.

Ms. Bradshaw argues that proceeding with discovery will force her to choose between defending the civil case and invoking her Fifth Amendment privilege, thereby risking self-incrimination. (ECF 56, p. 6). In essence, Ms. Bradshaw contends her rights should take priority over the constitutional rights of Othel Moore Jr. and the justice sought by his grieving family. This argument is legally flawed.

As explained in *Int'l. Bus. Machs. Corp. v. Brown*, 857 F. Supp. 1884, 1886-87 (C.D. Cal. 1994), the Fifth Amendment exists to protect against self-incrimination but does *not* shield defendants from the consequences of their actions or give them an advantage in civil litigation.

14

Courts have consistently rejected the notion that criminal charges entitle a defendant to delay civil proceedings indefinitely. *See, e.g., Abrams v. Tuberville*, No. 3:12cv177-MHT, 2013 WL 842710, at *4 (M.D. Ala. Mar. 6, 2013) ("[I]t is hard to see why the indirect social interest in bringing to justice perpetrators of crimes should ever take precedence over the direct interest of the victims of crimes to obtain redress for their losses."). Simply put, it would be nonsensical for the victim of alleged criminal conduct "to recover slower justice than other plaintiffs because the behavior … allege[d] is sufficiently egregious to have attracted the attention of the criminal authorities." *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573, 575 (S.D.N.Y. 2001).

Moreover, any concerns Ms. Bradshaw has that pleading the Fifth Amendment will have a negative jury inference is not sufficient to stay these proceedings. It is well established that "[t]he Fifth Amendment does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Fidelity*, 980 F. Supp. at 1023-24 (internal citations omitted). "Otherwise stated, although '[a] stay of civil trial until factually related criminal proceedings are concluded is sometimes warranted[,] a civil defendant cannot hide behind a blanket invocation of the Fifth Amendment privilege.'" *Id.* at 1024 (quoting *Koester*, 11 F.3d at 823). The fact that a person has been criminally charged simply "cannot give him a blank check to block all civil litigation on the same or related underlying subject matter." *Wilson v. Olathe Bank*, No. Civ. A. 97-2458-KHV, 1998 WL 184470, at *8 (D. Kan. Mar. 2, 1998). Additionally, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Cerro Gordo Charity,* 819 F.2d at 1480.

Furthermore, less drastic measures can protect Ms. Bradshaw's Fifth Amendment rights without derailing the civil case, such as sealing sensitive discovery or limiting the use of deposition

15

testimony. Courts have implemented such measures successfully in similar cases. *See Fidelity*, 980 F. Supp. at 1025-26; *Valentin v. Richardson*, 110 F.R.D. 622, 628 (D. Mass. 1986).

The presence of video evidence in this case further mitigates Ms. Bradshaw's claims of prejudice, as it provides an objective record of the incident and reduces reliance on testimonial discovery. In *Liggins*, the court found that video evidence of the incident in question mitigated any potential prejudice to the defendant in the civil case, even when closely related criminal proceedings were anticipated. *Liggins*, at \*4-\*5. Similarly, in this case, video evidence of the events leading up to and including the incident provides an objective account that can be utilized by both parties. This unbiased factual record minimizes any reliance on testimonial discovery that could implicate Fifth Amendment concerns, reinforcing the lack of justification for a stay.

In sum, Ms. Bradshaw's speculative concerns do not justify a stay. The Court has ample tools to protect her rights without delaying Plaintiffs' pursuit of justice. This civil case should proceed to ensure accountability, efficiency, and the timely resolution of these critical constitutional claims.

### 3. Allowing discovery to proceed will ensure efficiency.

This Court has a *strong* interest in moving this case towards its conclusion "without unnecessary delay." *In re CFS-Related Sec. Fraud Litig.*, 256 F.Supp.2d 1227, 1241 (N.D. Okla. 2003); *State Farm Mut. Auto. Ins. Co. v. Healthcare Chiropractic Clinic, Inc.*, Case No. 15-cv-2527, 2016 WL 9307608, at \*6 (D. Minn. Apr. 26, 2016). A stay – particularly one of indefinite duration, as Defendants seek here – obliterates that interest. *Sterling Nat'l Bank*, 175 F.Supp.2d at 580. Moreover, freely granting stays because litigants are defending simultaneous actions "would threaten to become a constant source of delay and an interference with judicial administration."

*Paine, Webber, Jackson, Curtis, Inc. v. Malon S. Andrus, Inc.,* 486 F.Supp. 1118, 1119 (S.D.N.Y. 1980). This factor militates heavily against a stay.

Ms. Bradshaw argues that a stay "would promote judicial economy and efficiency by avoiding unnecessary duplication and conserving resources." (ECF 89, p. 6). But this argument, conflates her personal litigation strategy with judicial efficiency. The invocation of the Fifth Amendment by Ms. Bradshaw is a matter of her individual defense choices and has minimal impact on the efficient progression of this civil case. The discovery process should proceed regardless of Defendant's decision to invoke her rights, and any resulting delays are attributable to Ms. Bradshaw, not the civil proceedings. Far from promoting judicial economy, granting a stay would delay the timely resolution of this case and unnecessarily burden the Court's docket.

> ### 4. Interests of persons other than the parties and public interest in the outcome of these proceedings weigh against a stay.

The fourth and fifth factors in determining whether a stay should be granted – considering the impact on persons beyond Plaintiffs or Defendants – strongly favor a prompt resolution of Plaintiffs' civil claims. The public has a vested interest in the timely progression of this case, which raises significant constitutional issues under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiffs have alleged that MDOC's policies, practices, and customs – particularly the condoning of excessive force by the CERT team and – violated the rights of inmates. [ECF 9, p. 30]. They further allege a systemic pattern of understaffing at the Jefferson County Correctional Center and deliberate indifference by MDOC and Centurion officials regarding the training of correctional officers and medical staff. [ECF 9, pp. 31, 33].

These constitutional claims are critical not only to address the harms suffered by Othel Moore, Jr., but also to safeguard the rights of MDOC inmates and ensure accountability. *Aldridge*, 2020 WL 223928, at *5 (citing *Ruszczyk v. Noor*, 2018 WL 4759838, at *6 (D. Minn. Oct. 2, 2018)

17

("Few disputes grab America's conscience, and indeed that of civil societies throughout the world, more than where there is a claim the very individuals or institutions people have mandated to use force when necessary to secure persons, rights, and property have…exceed[ed] the force necessary to uphold that mandate.").

Delaying this case while Defendant's criminal proceedings unfold will perpetuate the risk of ongoing harm, depriving Plaintiffs and the public of the systemic changes that a resolution of the *Monell* claims could mandate. Prompt adjudication of these claims is essential to deter future misconduct and compel necessary reforms within MDOC. Any potential prejudice to Ms. Bradshaw – or Defendants Leggins and Case – is significantly outweighed by the pressing need to address the unconstitutional policies at issue and prevent further violations. Policy considerations and public safety demand that these constitutional claims move forward without delay.

### D. If the Court finds that Defendant merits the extraordinary remedy of a stay, the Court should limit the stay.

If the Court finds that Ms. Bradshaw has not waived her Fifth Amendment privilege, a stay of the *entire case* in inappropriate. In *Liggins*, the court initially stayed the case only for Defendant Micheal Cohen, allowing discovery against the City of St. Louis to commence. *Liggins*, slip op. at 3. As the investigation dragged on for nearly two years, the Court lifted the stay entirely. *Id*. Similarly, in *White*, the court issued a partial stay, permitting discovery against the City while limiting discovery as to the officer, with an automatic deadline to lift the stay after approximately five months. *White v. Feaman*, No. 4:10-cv-518-SRC (E.D. Mo. Nov. 2018). In *Aldridge*, the court followed the same approach, partially staying discovery against the officer but allowing discovery to proceed against the City of St. Louis and other defendants. The court also required the defendant officer to file regular status updates on the criminal case. *Aldridge*, 2020 WL 223928, at *6.

18

A complete stay of this case is unwarranted. Precedent supports a more measured approach, such as a partial stay limiting discovery as to Defendants Bradshaw, Leggins, and Case while allowing discovery against MDOC and other defendants to proceed. Such an approach balances the interests of all parties and ensures that the litigation progresses without unnecessary delay. If the Court is inclined to grant a stay, Plaintiffs respectfully request the Court to follow this well-established practice and deny Defendants' request for a full stay.

## IV.    CONCLUSION

Defendant's speculative concern about self-incrimination and jury inferences do not justify delaying this civil case. Courts have consistently rejected indefinite stays, particularly where, as here, alternative measures can protect Defendant's Fifth Amendment rights without prejudicing Plaintiffs. Justice demands that this case move forward to address the egregious harm suffered by Othel Moore, Jr. and to ensure accountability for unconstitutional policies and practices. The Court should deny Defendant's request for a full stay and allow this critical litigation to proceed.

*Respectfully submitted,*

/s/ Ben Stelter-Embry
Ben Stelter-Embry      MO #65404
EMBRY LAW, LLC
4700 Belleview, Suite 300
Kansas City, MO 64112
P. (913) 231-9396
ben@embry-law.com

/s/ Andrew M. Stroth
Andrew M. Stroth
ACTION INJURY LAW GROUP
22 W. Washington Street, #1600
Chicago, IL 60602
P. (844) 878-4529
astroth@actioninjurylawgroup.com

/s/ Steven Hart

19

Steven Hart
James Ormond
HART MCLAUGHLIN & ELDRIDGE, LLC
22 W. Washington Street, #1600
Chicago, IL 60602
P. (312) 955-0545
shart@hmelegal.com
jormond@hmelegal.com

/s/ Larry Disparti
Larry Disparti
DISPARTI LAW, LLC
121 W. Wacker Drive, Suite 2300
Chicago, IL  60601
P: (312) 506-5511
ldisparti@dispartilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of March, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.


/s/ Ben Stelter-Embry
**Attorney for Plaintiff**