**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

DORIS ANN SCOTT and ORIEL MOORE,

        Plaintiffs,

v.

TREVOR FOLEY, in his official and
individual capacity as DIRECTOR of the
MISSOURI DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.

Case No. 2:24-cv-04107-MDH

**SUGGESTIONS IN SUPPORT OF CERTAIN DEFENDANTS'
MOTION FOR RECONSIDERATION PURSUANT TO FED. R. CIV. P. 54(b)**

Respectfully submitted,

**SCHREIMANN, RACKERS &
FRANCKA, L.L.C.**

/s/ Ryan Bertels
Ryan Bertels, #55167
931 Wildwood Drive, Suite 201
Jefferson City, MO 65109
573/634-7580
573/635-6034 (facsimile)
rb@srfblaw.com
**ATTORNEYS FOR DEFENDANTS LEGGINS,
CASE, BROWN, AND VARNER**

**AND**

**BATY OTTO SCHEER P.C.**

*/s/ Jennifer Donnelli*

Theresa A. Otto         MO #43453
Jennifer Donnelli       MO #47755
Stephanie M. Burton   MO #63458
4435 Main Street, Suite 1100
Kansas City, MO 64111
Telephone:   (816) 531-7200
Facsimile:    (816) 531-7201
totto@batyotto.com
jdonnelli@batyotto.com
sburton@batyotto.com
**ATTORNEYS FOR DEFENDANT**
**BRYANNE M. BRADSHAW**

## TABLE OF CONTENTS

**Page**

Argument ...................................................................................................................7

    A.  Reconsideration is Needed Because the Interview Statements were Compelled ...............8

    B.  This Court's Finding of a Fifth Amendment Waiver Should be Revisited .......................11

  Conclusion ...........................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*American Federation of State, County and Municipal Employees AFL-CIO, Council 61 v. State,* 653 S.W.3d 111 (Mo. banc. 2022) ..................................................................11

*Anthony v. Runyon,* 76 F.3d 210 (8th Cir. Ark. 1996) ...................................................................8, 10

*Evans v. Contract Callers, Inc.,* No. 4:10CV2358 FRB, 2012 WL 234653 (E.D. Mo. Jan 25, 2012) ..................................................................................................................7

*Gardner v. Broderick*, 392 U.S. 273 (1968) ......................................................................................6

*Garrity v. New Jersey*, 385 U.S. 493 (1967)..............................................1, 3, 5, 11, 12, 13, 14

*Grozdanich v. Leisure Hills Health Center, Inc.*, 48 F. Supp.2d 885 (D. Minn. 1999) ..............................................................................................................................6

*Julianello v. K-V Pharmaceutical Co.,* 791 F.3d 915 (8th Cir. Mo. 2015) .....................................7

*KC1986 Ltd. Ptshp. v. Reade Mfg.*, 472 F.3d 1009 (8th Cir. Mo. 2007)................................7, 9, 10

*Kern v. TXO Prod. Corp.,* 738 F.2d 968 (8th Cir. 1984) ....................................................................8

*Laird v. Stilwill*, 982 F. Supp. 1346 (N.D. Iowa 1997)......................................................................8

*Minnesota v. Murphy*, 465 U.S. 420 (1984) ....................................................................................12

*Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.,* 48 F.3d 1066 (8th Cir. 1995) ..................................................................................................................................7

*New Jersey v. Portash*, 440 U.S. 450 (1979) ..................................................................................14

*Pettibone v. TJX Cos., Inc.,* No. 2:18-CV-00025-NCC, 2019 WL 6170791 (E.D. Mo. Nov. 20, 2019)..........................................................................................................6, 7

*Trickey v. Kaman Indus. Techs. Corp.*, No. 1:09-CV-00026 (SNLJ), 2011 WL 2118578, (E.D. Mo. May 26, 2011)..................................................................................8

*U.S. v. Abari,* No. 19-cr-103 (MJD/ECW), 2019 WL 10886798 (D. Minn. Oct. 1, 2019) ..............................................................................................................................9

*United States v. Baez*, No. CR 17-135(2) ADM/DTS, 2018 WL 1582263 (D. Minn. Mar. 30, 2018)....................................................................................................9

*United States v. Chavez Loya*, 528 F.3d 546 (8th Cir. 2008) ..........................................................9

*United States v. Luger*, 837 F.3d 870 (8th Cir. 2016)...................................................................7

*Washam v. BNSF Railway Co.,* No. 3:19-cv-00231 KGB, 2022 WL 989037 (E.D. Ark. Mar. 31, 2022) ................................................................................................................6, 7

**SUGGESTIONS IN SUPPORT OF CERTAIN DEFENDANTS'**
**MOTION FOR RECONSIDERATION PURSUANT TO FED. R. CIV. P. 54(b)**

The law firm website of one of Plaintiffs' counsel herein (Dispartilaw.com) advises public employees who find themselves in the same shoes as the Moving Defendants[1] (i.e., facing the consequences of statements made in interviews compelled by their employer) that "none of the statements the [public employee] made during the internal interview can be used to prosecute him in a criminal proceeding…**Since he was compelled to make the statements, Garrity** [*Garrity v. New Jersey*, 385 U.S. 493 (1967)] **protected his statements from being used against him."** (emphasis by Plaintiffs' counsel)[2]

Outside the confines of this case, Plaintiffs' counsel would advise the Moving Defendants that their statements remain protected by their Fifth Amendment privileges against self-incrimination because their employer compelled them to give the interview statements:

> If you are a public employee, meaning the government is your employer, you are afforded certain rights for that very reason. Garrity is one of the most important of those rights if you are ever questioned by your employer regarding criminal conduct…
>
> *Let's take a moment to discuss the difference between being compelled to make a statement versus being asked to make a voluntary statement.* This is important because Garrity only applies when your employer makes it clear that you will face disciplinary action if you refuse to answer. Here are a few scenarios to help you understand the difference…
>
> A Cook County police officer is asked to answer questions regarding allegations of PPP fraud during the COVID-19 pandemic. His supervisor orders him to participate in the administrative interview and warns him that failure to do so would result in disciplinary action.
>
> During the interview, the officer admits to committing PPP fraud and is immediately terminated for violating the department's policy. However, *none of the statements the officer made during the internal interview can be used to prosecute him in a criminal proceeding.*

---

[1]     Defendants Justin Leggins, Jacob Case, and Bryanne Bradshaw (the "Moving Defendants"). All have submitted Affidavits herein (Exs. A, B, D).

[2]     Understanding Your Garrity Rights|Internal Investigations (www.dispartilaw.com).

**Since he was compelled to make the statements, Garrity protected his statements from being used against him.**

(www.dispartilaw.com, some emphasis added)

The Court recently denied the Moving Defendants' Motions to Stay (Orders, Dkts. 104 & 106); they were filed to allow the criminal proceedings against them to progress first with the attendant assurance that the invocation of the Moving Defendants' Fifth Amendment rights in the criminal proceedings would not create an adverse inference in this case to the detriment of the Moving Defendants or any other affected Defendants (for example, the Bystander Defendants). (Dkt. 114 by the Bystander Defendants, pp. 1-2, commenting on several of Plaintiffs' various legal theories that seek to place vicarious or related liability on the Bystander Defendants as a result of the Moving Defendants' alleged conduct, such that the Bystander Defendants would be "perfectly prejudiced" by a stay denial, p. 3)

The linchpin of the Court's stay denial was that the Moving Defendants had voluntarily waived their Fifth Amendment rights when they gave one or more interviews to investigators following the death of Othel Moore.[3] The Court reasoned that the Moving Defendants no longer had Fifth Amendment rights to invoke and that a stay was unnecessary because an adverse inference was impossible.

The Court's finding followed Plaintiffs' opposition to the stay wherein, contradicting their own counsel's advice to public employees other than the Moving Defendants, that "[b]y participating in two separate investigations and answering questions directly related to the underlying incident, [the Moving Defendants] made a deliberate, knowing, and intentional

---

[3]        Bradshaw's stay briefing incorrectly stated that her Cole County interview involved a non-Mirandized statement. Bradshaw was given a Miranda warning and signed a waiver, but it was in an atmosphere of compulsion and on fear of losing her job with the DOC, as established herein and in the suppression motion Bradshaw has filed in the criminal proceeding.

decision to relinquish her privilege." (Dkt. 91, p. 7, for Bradshaw) According to Plaintiffs, there was no adverse inference that remained available, but rather the Moving Defendants' statements were admissible and a valid subject of civil discovery, despite *Garrity*.

Respectfully, the Court's stay denials did not account for critical facts now of record, including the Affidavit of Bryanne Bradshaw attached here as Ex. A, the Affidavit of Jacob Case, attached here as Ex. B, and the Affidavit of Justin Leggins, Ex. D hereto. The statements given by the Moving Defendants to the Cole County Sheriff's Department and the internal affairs unit of her employer (the Missouri Department of Corrections, "DOC") were coerced under the threat of job loss.

The statements—obtained under threat of employment being terminated—were compelled within the meaning of the Fifth Amendment, the Fourteenth Amendment Due Process Clause, the Missouri Constitution, and *Garrity v. New Jersey*, 385 U.S. 493 (1967). The same is true for the Moving Defendants' statements to the internal investigative unit of the DOC, as evidenced by Exs. A, B, and D.

According to Bradshaw:

> The DOC's directive instructed me to give the interview, and I believed I had no choice but to give the interview. The understanding I immediately took from the email [from the Warden] was that I was to answer any questions asked me by Cole County. If I refused, my understanding was that I would be fired. The Warden had the authority, I believed, to instruct me to cooperate with Cole County.

> My statements to both the Cole County Sheriff's Office and the OPS were not freely and voluntarily made…I believed the DOC would treat a refusal by me to sign the Waiver as insubordination that would result in my termination. I believed I was not allowed by the DOC to have a private attorney with me during either session.

(Ex. A, Bradshaw Affidavit, p. 2-3, ¶¶ 7, 16)

According to Case:

Had I not received the directive from DOC, I would have declined to participate in the Cole County investigation without the advice and presence of my own attorney. Based on the DOC 's command, I believed I was not allowed to have my own attorney involved in the Cole County interview.

I had no belief when I gave either interview to Cole County that there was a possibility I would be charged criminally in connection with Mr. Moore's death.

On or about December 8, 2023, I was interviewed by Investigator Rucker with the DOC's Office of Professional Standards ("OPS"), a unit within the DOC.

Investigator Rucker directed me to provide a written statement for the OPS and I fully complied. I believed it was a requirement of my job with the DOC to do this. At the time I provided my written statement to OPS, I did not believe there was a possibility of criminal charges being brought against me for Mr. Moore's death.

I participated in both the interview with the Cole County Sheriff's Office and OPS with the understanding that if I did not participate, I would be terminated immediately by the DOC.

(Ex. B, Case Affidavit, p. 3, ¶¶ 13-17)

According to Leggins:

6.      That same day [the date of the subject incident], I met with Det. Cpl. Greg Henson of the Cole County Sheriffs Department. I was told by my supervisor with DOC that I was required to meet Det. Henson because a death had occurred at a correctional facility.

7.      During this meeting with Det. Henson, I was not read my Miranda rights.

8.      I made a statement under the belief I was required to, under threat of termination.

15.      My statements to both the Cole County Sheriffs Office and the OPS were not freely and voluntarily made. They were compelled by a belief that I had to follow my employer's directive or lose my livelihood. I believed the DOC would treat a refusal by me to sign the Waiver as insubordination that would result in my termination. I believed I was not allowed by the DOC to have a private attorney with me during either session.

(Ex. D, Leggins Affidavit, p. 2, ¶¶ 6-8, 15)

The Constitution prohibits the admission of coerced statements in a criminal case, and fundamental fairness dictates a finding that the Moving Defendants did not exhaust their Fifth

Amendment privileges by giving interviews. The criminal proceeding should at least address this issue (Bradshaw's suppression motion, filed April 30, 2025, is Ex. C hereto)[4] prior to this case proceeding into discovery from the Moving Defendants.

Discovery should not be burdened with the uncertainty of whether a given claim element must be proven in the ordinary course or is already subject to an adverse inference. This civil lawsuit, while initiated by private plaintiffs, functionally stands in the shoes of the decedent's rights and seeks to hold the Moving Defendants accountable as a state actor. Allowing Plaintiffs to use compelled statements (and to treat the Moving Defendants' Fifth Amendment privileges as exhausted) would effectively allow benefit from the government's coercion of the Moving Defendants, facilitating civil liability against them based on compelled statements when criminal liability could not be imposed directly with the same evidence because it is inadmissible. Such would be fundamentally unfair and inconsistent with the spirit of the Fifth Amendment and *Garrity*, the decision referenced on the law firm website of Plaintiffs' counsel (above).

A limited stay of this case would allow the criminal court to decide whether to suppress the Moving Defendants' interview statements. Suppression relief has been sought by Bradshaw. Suppression relief soon will be sought by the other Moving Defendants in their criminal cases. Bradshaw's suppression motion has a 10-day response deadline, and Bradshaw has a five-day reply deadline. It is Bradshaw's expectation that <u>the suppression motion will be heard on or before the next scheduled criminal hearing on June 16, 2025</u>. That hearing is docketed as a plea hearing/trial date setting. Accordingly, reconsideration and allowance of a limited stay of 90 days would not inordinately delay this case.

---

[4]     The other Moving Defendants anticipate suppression motions will be filed shortly in the criminal proceedings against them.

This Court's decisions as to waiver, the availability of adverse inferences, and the like are independent of the criminal court's decision, but this Court may find instructive what the criminal Judge decides as to suppression. To that point, the Moving Defendants acknowledge the decision in this Court is not automatically binding on the admissibility of the statements in the criminal case. *Gardner v. Broderick*, 392 U.S. 273 (1968).

Compelling testimony beyond these potentially inadmissible statements, however, could create a snowball effect that would affect the progression of this case. If the original statements are deemed inadmissible, any subsequent statements, admissions, or discovery derived from them will be considered 'fruit of the poisonous tree' and will also be inadmissible in the criminal case. *Gardner*, 392 U.S. at 276 ("Answers may be compelled regardless of the privilege if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against the person testifying."). Plaintiffs are improperly attempting to hamstring the Moving Defendants to bolster and ease the discovery process towards a civil judgment for money damages. To avoid error, this and the state court should be consistent in the treatment of the statements. Obtaining that consistency requires a limited stay to allow the criminal Judge to consider the suppression motion.

The Moving Defendants seek relief pursuant to Fed. R. Civ. P. 54(b)[5] to reconsider the Dkt. 104 & 106 orders denying their respective motions to stay this civil lawsuit to allow, at a minimum, the resolution of motions to suppress in the Circuit Court of Cole County against the Moving Defendants. As attendant relief, the Moving Defendants seek reconsideration of the

---

[5]     The stay denials are interlocutory and non-dispositive and therefore are most likely governed by Fed. R. Civ. P. 54(b). "Where [] claims against another party in the litigation remain unresolved, a Motion to Reconsider must be addressed under the rubric of Rule 54(b) []." *Grozdanich v. Leisure Hills Health Center, Inc.*, 48 F. Supp.2d 885, 887-88 (D. Minn. 1999). In the alternative, the Moving Defendants seek relief under Fed. R. Civ. P. 60(b). *Washam v. BNSF Railway Co.*, No. 3:19-cv-00231 KGB, 2022 WL 989037 (E.D. Ark. Mar. 31, 2022) at *2; *Pettibone*, 2019 WL 6170791 at *2.

Court's finding that they waived their Fifth Amendment privileges by giving statements to the Cole County Sheriff's Office and the Office of Professional Standards within the DOC.

## ARGUMENT

"The Federal Rules of Civil Procedure 'do not mention motions for reconsideration.' The Court nevertheless has authority to reconsider its own interlocutory decisions." *Pettibone v. TJX Cos., Inc.,* No. 2:18-CV-00025-NCC, 2019 WL 6170791 (E.D. Mo. Nov. 20, 2019) at *2 (citation omitted). "[I]inherent authority to reconsider interlocutory orders [is] as a practical matter [what] a district court needs in order to modify orders in response to the changing circumstances of a lawsuit before it." *Washam v. BNSF Railway Co.,* No. 3:19-cv-00231 KGB, 2022 WL 989037 (E.D. Ark. Mar. 31, 2022) at *2. The authority is in place "any time prior to the entry of judgment." *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.,* 48 F.3d 1066, 1070 (8th Cir. 1995).

"[A] motion for reconsideration serves the limited function of correcting manifest errors of law or fact or presenting newly discovered evidence." *United States v. Luger*, 837 F.3d 870, 875 (8th Cir. 2016) (internal quotations omitted). Reconsideration is tied to "extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Evans v. Contract Callers, Inc.,* No. 4:10CV2358 FRB, 2012 WL 234653 (E.D. Mo. Jan 25, 2012) at *2 (quotation omitted). Reconsideration is not to be used to unnecessarily continue briefing when the legal arguments or facts could have been but were not initially raised. *Julianello v. K-V Pharmaceutical Co.,* 791 F.3d 915, 923 (8th Cir. Mo. 2015).

The district court's decision on a reconsideration motion will be reviewed under an abuse of discretion standard. *KC1986 Ltd. Ptshp. v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. Mo. 2007). "The abuse of discretion standard dictates that we consider whether the district court (1)

7

failed to consider 'a relevant factor that should have been given significant weight;' (2) considered and gave significant weight to 'an irrelevant or improper factor'; or (3) considered 'all proper factors, and no improper ones,' but in weighing those factors, committed a 'clear error of judgment.'" *Id.* citing *Kern v. TXO Prod. Corp.,* 738 F.2d 968, 970 (8th Cir. 1984).

Other courts have considered:

> … if the earlier decision (1) misunderstood a party, (2) made a decision outside of the adversarial issues, or (3) would be rendered incorrect because of a "controlling or significant change in law" since the issues were submitted to the Court.

*Trickey v. Kaman Indus. Techs. Corp.*, No. 1:09-CV-00026 (SNLJ), 2011 WL 2118578, (E.D. Mo. May 26, 2011) at *2.

The District Court's reconsideration power may be greater than the power to amend a final judgment. *Laird v. Stilwill*, 982 F. Supp. 1346, 1354 (N.D. Iowa 1997).

A. **Reconsideration is Needed Because the Interview Statements were Compelled.**

Contrary to Plaintiffs' opposition briefing, there was no a "deliberate, knowing, and intentional decision" by the Moving Defendants to waive their Fifth Amendment privileges against self-incrimination. (Plaintiffs' Stay Opposition, Dkt. 91, p. 7) The evidence submitted herewith bears this out and was not before the Court when the stay denials were issued.

Plaintiffs may contend that the Moving Defendants knew of the circumstances of their statements (given in 2024) when they first sought a stay from the Court and should have submitted their sworn Affidavits then. Such a position could find support in *Anthony v. Runyon*, 76 F.3d 210 (8th Cir. Ark. 1996), but for the difference in jurisdictions in that the Western District Local Rules do not have an equivalent to the Local R. C–7(c) discussed there: "[t]he local rules direct parties to provide supporting factual material '[i]f a motion requires consideration of facts not appearing of record.'" *Id.* at 215.

Within the context of evidence suppression bearing on criminal matters, however, such a hard-and-fast rule may be misplaced. In *U.S. v. Abari,* the court considered a reconsideration request concerning the suppression of evidence in light of criminal procedural considerations: "given the rights at issue and in view of the fact that the Federal Rules of Criminal Procedure 12(b)(3) and (c)(3) provide that motions to suppress evidence must be raised before trial, the Court will briefly address the merit of these arguments." No. 19-cr-103 (MJD/ECW), 2019 WL 10886798 (D. Minn. Oct. 1, 2019) at **4-5.

Similarly, federal criminal courts have acknowledged the need to understand why certain evidence was not brought forth earlier without rejecting reconsideration automatically because the information was not presented with the opening briefing. "In deciding [] whether to reconsider a suppression ruling, a court may consider the party's explanation as to why a particular argument could not have been raised earlier." *United States v. Baez*, No. CR 17-135(2) ADM/DTS, 2018 WL 1582263 (D. Minn. Mar. 30, 2018) at *4 citing *United States v. Chavez Loya*, 528 F.3d 546, 555 (8th Cir. 2008)).

The Eighth Circuit rejected a similar hard-and-fast application of the timing considerations on a reconsideration motion in *KC1986 Ltd. Ptshp.*, reversing the District Court's finding that the information could have been presented earlier. 472 F.3d at 1016. There, the issue involved calculation of interest on a final judgment. *Id.* The District Court was not presented with mitigating data *then in existence* that would reduce the judgment amount:

> Prior to the entry of the final judgment, Donald and Victor Horne, K.C.1986, and DeAngelo requested the district court to amend the Allocation Order by applying pretrial settlements as credits to offset the judgment and preclude any prejudgment interest award, because the $1,160,673.17 total of Borax's response costs did not reflect the fact that Borax had obtained pretrial settlements from other parties in amounts that had been either paid or promised to Borax. The district court denied the motion to amend in a final order dated April 4, 2005, concluding that the parties had failed to bring the settlement credits to the court's

*attention in a timely fashion*.

472 F.3d at 1016 (emphasis added).

The Eighth Circuit acknowledged that the information *could have been* presented earlier, but the District Court's refusal to consider the offsets was an abuse of discretion:

> We agree that the issue should have been presented to the district court in a more timely matter. Nevertheless, we conclude that the district court abused its discretion by refusing to consider the settlement credits issue because CERCLA requires such consideration, and final judgment had not yet been entered.

*KC1986 Ltd. Ptshp.*, 472 F.3d at 1016. The reasoning of the Eighth Circuit was two-fold: the governing law (irrespective of the timeliness of the submission of information) "requires such consideration, and final judgment had not yet been entered." *Id.*

Here, there has been no final judgment and the case is in some respects still at the pleading stage in that an Amended Complaint (Dkt. 112) has not yet been answered by the Moving Defendants. Thus, reconsideration is available (and should issue here) even when the crux of the reconsideration request is information existing at the time of the original request for relief.

Moreover, decisions by the Moving Defendants to seek suppression of the Cole County and DOC interviews by seeking relief from the Circuit Court of Cole County were not made until after the Court denied the Moving Defendants' motions to stay. Within the rationale of *Anthony v. Runyon*, the supporting Affidavits did not exist until this reconsideration briefing and were not able to be produced during the initial briefing. The Bradshaw Affidavit has been submitted in the context of a suppression motion filed on April 30, 2025: "[b]ecause the Anthonys do not allege that they could not have produced affidavits rebutting the presumption that the defendants were acting within the scope of their employment before the court decided the motion to substitute and dismiss, it was not an abuse of discretion to deny the motion for reconsideration." 76 F.3d at

216. Case and Leggins intend to submit their Affidavits also to the criminal court.

The Moving Defendants respectfully request that the Court consider the undisputed evidence presented here that they were coerced into giving the interviews that this Court has held waived their Fifth Amendment privileges.

**B.**    **This Court's Finding of a Fifth Amendment Waiver Should be Revisited.**

The Court's previous finding that the Moving Defendants voluntarily waived their Fifth Amendment rights did not account for critical facts now being submitted through the attached Affidavits. There was no voluntary waiver of the Fifth Amendment. Rather, the involvement of the Moving Defendants with Cole County and OPS was compelled.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." *Garrity* established vital Fifth Amended protection for public employees: when a government employer gives an employee a choice between self-incrimination and job loss, and the employee incriminates herself, those statements are considered coerced and cannot be used against the employee in a subsequent criminal prosecution. 385 U.S. at 500.

*Garrity* found the police officers' statements "were not voluntary but were coerced" because of the economic threat to their livelihood from job loss, and the Supreme Court reversed their convictions. 385 U.S. at 500. The *Garrity* rule ensures that the government cannot sidestep the Fifth Amendment by using a public employer's power to punish silence through an adverse employment action towards at-will public employees like the Moving Defendants. *See American Federation of State, County and Municipal Employees AFL-CIO, Council 61 v. State,* 653 S.W.3d 111, 116 (Mo. banc. 2022) (because the merit system is not in force for public employees in Missouri, "the scope and definition of at-will employment provide for indefinite

duration *and termination without cause*…") (emphasis added).

Although *Garrity* dealt with the use of statements in a criminal proceeding, its logic extends to any forum where the government (or a proxy for the government) would seek to use the fruits of that compulsion to penalize the individual. The facts here fall within the scope of the *Garrity* ruling:

- **There was a threat of termination and loss of livelihood**: the DOC explicitly directed its employees (including the Moving Defendants) to cooperate and answer questions by outside law enforcement—the corrections officers, the Moving Defendants, were not asked about their willingness or given a choice whether to sit for their pre-arranged interviews with the CCSD. This is exactly the predicament in *Garrity*, where officers were warned that refusal to answer would result in removal from office. The coercion here was codified in an email and backed by Missouri law that public employees can be terminated for refusing to answer job-related questions (so long as they are not forced to surrender immunity). The "choice" facing the Moving Defendants was cooperate or lose their public careers–a choice the Constitution says the officers should not be forced to make without immunity.

- **The Moving Defendants' statements were incriminating**: At the time given, the statements were in the context of a reasonable foreseeability to the average person that the statements could be used in a criminal prosecution for Moore's death. The investigators were gathering evidence of possible crimes (as shown by the eventual charges), even if one or more of the Moving Defendants did not fully appreciate their exposure to criminal charges. Under *Minnesota v. Murphy*, the test is whether a reasonable person would believe the answers could be used to incriminate, and whether

the answers were in fact compelled. 465 U.S. 420 (1984). Here, a reasonable person would see the subject of the interview was a man's death and that the information provided by the Moving Defendants could implicate them in wrongdoing.

- **No immunity was granted at the time of questioning**: In *Garrity*, New Jersey had no statute granting immunity, and none was offered to the officers who gave statements, so their statements were used against them–an outcome the Supreme Court forbade. The Moving Defendants were never told their statements would be immune from prosecution. The DOC did not provide a so-called "Kalkines" warnings (the federal equivalent where an employee is ordered to answer but given use immunity). The corrections officers were simply told to answer–period.

    This is the very scenario in which *Garrity* automatically confers "use immunity" as a matter of constitutional law: because the state compelled the subject statements without immunizing the Moving Defendants, the Fifth Amendment itself prohibits their use in any criminal case against them. Missouri courts will have to honor that if the case goes to trial–they cannot use the compelled internal or CCSD interview statements in the criminal trial (and presumably they will be suppressed).

## Implications in the Civil Case

While the literal text of the Fifth Amendment refers to a "criminal case," courts have long recognized that coerced confessions are inadmissible not only in criminal trials but generally elsewhere—because of their inherent unreliability and the public policy against compulsion. For instance, a confession obtained in violation of due process (through physical coercion) is inadmissible in any proceeding, as it offends fundamental fairness. The coercion here was of a different kind–economic coercion–but it nevertheless implicates the same Fifth Amendment

concerns.

Allowing the use of *Garrity*-protected statements in a civil case would create an end-run around the Fifth Amendment. State Prosecutors could simply wait for civil discovery to get what they could not directly compel. Plaintiffs in a Section 1983 action (who often work closely with underlying criminal investigations) could serve as the conduit for introducing tainted statements.

<u>**CONCLUSION**</u>

The Eighth Circuit has not squarely decided in a published opinion whether *Garrity*-compelled statements must be excluded from a related civil proceeding. Even absent direct authority, however, the principles are clear: the Moving Defendants' statements were involuntary in the constitutional sense. The Supreme Court has consistently held that statements deemed involuntary (whether from physical abuse, psychological ploys, or impermissible threats) are inadmissible for any purpose in criminal cases–even impeachment. *New Jersey v. Portash*, 440 U.S. 450 (1979), held that grand jury testimony given under a promise of immunity, hence compelled, could not be used to impeach the defendant at trial, because coerced statements are inadmissible.

By analogy, *Garrity* statements, which are effectively immunized by the Fifth Amendment, cannot be used even for impeachment or to challenge credibility in a criminal trial.) It follows that if the Moving Defendants were to testify in this civil case, Plaintiffs should not be allowed to confront them with inconsistencies from *Garrity* statements or otherwise use them to attack the Moving Defendants–doing so would be using coerced material to impose liability. This Court has the supervisory power to ensure the proceedings are fair and in accordance with constitutional norms. Excluding the statements serves those ends.

The Court should reconsider its stay denial and enter an order staying this case for a period of at least 90 days for the Circuit Court of Cole County, Missouri to rule on the Moving Defendants' respective suppression motions. As attendant relief, the Court should reconsider its finding that the Moving Defendants waived their Fifth Amendment privileges by giving statements to the Cole County Sheriff's Office and the Office of Professional Standards within the DOC. The Moving Defendants seek such other and further relief as the Court deems appropriate.

Respectfully submitted,

**SCHREIMANN, RACKERS &
FRANCKA, L.L.C.**

/s/ Ryan Bertels
Ryan Bertels, #55167
931 Wildwood Drive, Suite 201
Jefferson City, MO 65109
573/634-7580
rb@srfblaw.com
**ATTORNEYS FOR DEFENDANTS
LEGGINS, CASE, BROWN, AND
VARNER**

**AND**

**BATY OTTO SCHEER P.C.**

*/s/ Jennifer Donnelli*

| | |
|---|---|
| Theresa A. Otto | MO #43453 |
| Jennifer Donnelli | MO #47755 |
| Stephanie M. Burton | MO #63458 |

4435 Main Street, Suite 1100
Kansas City, MO 64111
Telephone: (816) 531-7200
Facsimile: (816) 531-7201
totto@batyotto.com
jdonnelli@batyotto.com
sburton@batyotto.com
**ATTORNEYS FOR DEFENDANT
BRYANNE M. BRADSHAW**

15

<u>**CERTIFICATE OF SERVICE**</u>

This certifies the foregoing was filed with the Court via the Court's e-filing system on May 1, 2025, with copies the same day via electronic mail to:

Andrew M. Stroth (admitted Pro Hac Vice)
ACTION INJURY LAW GROUP
22 W. Washington Street, #1600
Chicago, IL 60602
Telephone: (844) 878-4529
astroth@actioninjurylawgroup.com

Steven Hart (admitted Pro Hac Vice)
James Ormond (admitted Pro Hac Vice)
HART MCLAUGHLIN & ELDRIDGE, LLC
22 W. Washington Street, #1600
Chicago, IL 60602
Telephone:  (312) 955-0545
shart@hmelegal.com
jormond@hmelegal.com

Larry Disparti (admitted Pro Hac Vice)
DISPARTI LAW, LLC
121 W. Wacker Drive, Suite 2300
Chicago, IL 60601
Telephone: (312) 506-5511
ldisparti@dispartilaw.com

Ben Stelter-Embry MO #65404
EMBRY LAW, LLC
4700 Belleview, Suite 300
Kansas City, MO 64112
Telephone: (913) 231-9396
ben@embry-law.com

**Attorneys for Plaintiffs**

Dennis S. Harms, #58937
SANDBERG PHOENIX & von GONTARD P.C.
701 Market Street, Suite 600
St. Louis, MO 63101-1826
Telephone: (314) 231-3332
Facsimile: (314) 241-7604
dharms@sandbergphoenix.com
**Attorneys for Defendant Jennifer Long**

J. Thaddeus Eckenrode, #31080
ECKENRODE-BAUMAN
11477 Olde Cabin Rd., Suite 110
St. Louis, MO 63141
Telephone: (314) 726-6670
Facsimile: (314) 726-2106
jte@eckenrode-law.com
**Attorneys for Defendant**
**Centurion of Missouri, LLC**

Scott R. Pool, #42484
GIBBS POOL AND TURNER, P.C.
3225 A Emerald Lane
Jefferson City, MO 65109
Telephone: (573) 636-2614
Facsimile: (573) 636-6541
pool@gptlaw.net
**Attorneys for Defendants Davison, Williams,**
**Wells, Glatczak and Nkwocha**

Ryan Bertels, #55167
SCHREIMANN, RACKERS & FRANCKA, L.L.C.
931 Wildwood Drive, Suite 201
Jefferson City, MO 65109
Telephone: (573) 634-7580
Facsimile: (573) 635-6034
rb@srfblaw.com
**Attorneys for Defendants Leggins, Case,**
**Brown and Varner**

Kevin M. Smith, #51599
ANDREW BAILEY Attorney General
Deputy Chief Counsel – Litigation
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Telephone: (816) 889-5106
Kevin.smith@ago.mo.gov
**Attorneys for Defendants Foley and Morriss**

*/s/ Jennifer Donnelli*
**Attorney for Defendant**

16