## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

DORIS ANN SCOTT and ORIEL MOORE,

Plaintiffs,

v.

TREVOR FOLEY, in his official and
individual capacity as DIRECTOR of the
MISSOURI DEPARTMENT OF
CORRECTIONS, et al.,

Defendants.

**EXHIBIT B**

Case No. 2:24-cv-04107-MDH

### AFFIDAVIT OF JACOB CASE

Jacob Case, having been duly sworn on oath, states the following.

1.     I am over the age of 18 years, am of sound mind, and am personally acquainted with the information provided in this statement. I would testify to the following if asked to do so in a Court of law.

2.     I am a named Defendant in the case and provide this statement to be used in the lawsuit.

3.     I previously was employed with the Missouri Department of Corrections ("DOC") for approximately **six** years. At the time of the events this lawsuit concerns, I was a Sergeant working at the Potosi Correctional Center ("PCC"). I was also a member of the CERT team and would be deployed to other prisons with DOC as part of the assignment.

4.     On the date of Othel Moore's death, my CERT team was deployed to assist with cell searches in Housing Unit 7 of Jefferson City Correctional Center. This was the Unit where Mr. Moore resided on the day of the events at issue.

5.  On Decmember 8, 2023, the date of Othel Moore's death, I met with Det. Cpl. Greg Henson of the Cole County Sheriff's Department. I was told by my supervisor with DOC that I was required to meet Det. Henson because a death had occurred at a correctional facility.

6.  During this December 8, 2023, meeting with Det. Henson, I was not read my Miranda rights.

7.  Shortly after Mr. Moore's death, in or around mid-January 2024, I received a directive from my supervisors at DOC, with information about a prearranged interview I was required to give to the Cole County Sheriff's Office concerning Mr. Moore's death.

8.  I believe other DOC employees involved in the events concerning Mr. Moore received the same or similar directives from the DOC in the same timeframe as I did. Upon information and belief, at least eight PCC employees were interviewed by Cole County Sheriffs' Department on the same date I was interviewed. At the time of my interview with Cole County, I believed I was one of several of my colleagues who were also providing information to Cole County because they (like me) believed their jobs would be lost if they refused.

9.  The DOC's directive instructed me to give the interview, and I believed I had no choice but to give the interview. The understanding I immediately took from the directive was that I was to answer any questions asked me by Cole County. If I refused, my understanding was that I would be fired. The PCC Wardens had the authority, I believed, to instruct me to cooperate with Cole County.

10.  On January 26, 2024, I was interviewed by Det. Aaron Roberts with the Cole County Sheriff's Office. Det. Roberts began the interview by explaining he would give me a Miranda warning.

11.  As the interview began, I was provided with and signed a Miranda Waiver of Rights Form ("Waiver").

12. Based on the directive from my supervisors at DOC, I did not believe I could refuse to sign the Waiver. The only reason I signed the Waiver was that I believed I would lose my job with the DOC if I did not sign the Waiver. I needed my job with the DOC as a matter of my livelihood.

13. Had I not received the directive from DOC, I would have declined to participate in the Cole County investigation without the advice and presence of my own attorney. Based on the DOC's command, I believed I was not allowed to have my own attorney involved in the Cole County interview.

14. I had no belief when I gave either interview to Cole County that there was a possibility I would be charged criminally in connection with Mr. Moore's death.

15. On or about December 8, 2023, I was interviewed by Investigator Rucker with the DOC's Office of Professional Standards ("OPS"), a unit within the DOC.

16. Investigator Rucker directed me to provide a written statement for the OPS and I fully complied. I believed it was a requirement of my job with the DOC to do this. At the time I provided my written statement to OPS, I did not believe there was a possibility of criminal charges being brought against me for Mr. Moore's death.

17. I participated in both the interview with the Cole County Sheriff's Office and OPS with the understanding that if I did not participate, I would be terminated immediately by the DOC.

18. My statements to both the Cole County Sheriff's Office and the OPS were not freely and voluntarily made. They were compelled by a belief that I had to follow my employer's directive or lose my livelihood. I believed the DOC would treat a refusal by me to sign the Waiver as insubordination that would result in my termination. I believed I was not allowed by the DOC to have a private attorney with me during either session.

FURTHER AFFIANT SAYETH NOT.

Jacob Case

STATE OF MISSOURI              )

                               ) ss

COUNTY OF St. Francois         )

On this 30 day of April, 2025, before me personally appeared Jacob Case, to me known to be the person described herein through verification personally conducted by me, who executed the foregoing instrument and acknowledged that he executed said instrument as his free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal in Desloge, MD the day and year last above written.

Notary Public

My commission expires: 12-06-2026

EMILY ADAMS
Notary Public - Notary Seal
St Francois County - State of Missouri
Commission Number 22611393
My Commission Expires Dec 6, 2026