# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | | |
|---|---|---|
| DORIS ANN SCOTT and ORIEL MOORE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-CV-04107-MDH |
| | ) | |
| CENTURION OF MISSOURI, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CERTAIN DEFENDANTS'
<u>MOTION FOR RECONSIDERATION</u>**

i

# TABLE OF CONTENTS

I.      Introduction                                                                                          1

II.     The Motion Fails Under Well-Established Standards of Reconsideration       1

III.    Even if the Moving Defendants' Motion Wasn't Barred Under Rule 54(b),
        They Are Not Entitled to *Garrity* Protection                                        5

IV.     Discovery Should Not Be Stayed Even if *Garrity* Applied                      11

V.      The Court's Orders Were Correct Then and Remain Correct Now              13

VI.     Conclusion                                                                                        14

# TABLE OF AUTHORITIES

Cases

*Arizona v. California*, 460 U.S. 605, 618 n. 8 (1993) ....................................................................... 4
*Benjamin v. City of Montgomery*, 725 F.2d 959 (11th Cir. 1986) ................................................10,11
*Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ....................................... 4
*Evans v. Contract Callers, Inc.*, Case No. 4:10CV2358 FRB, 2012 WL 234653, at *2 (E.D. Mo. Jan. 25, 2012) ............................................................................................................................... 4
*Frierson v. City of Terrell*, Case No. Civ. A. 3:02-CV-2340H, 2003 WL 21955863 (N.D. Tex. Aug. 15, 2003) ............................................................................................................ 12, 13, 14
*Gardner v. Broderick*, 392 U.S. 273, 88 S. Ct. 1913 (1968) ........................................................ 6
Garrity v. New Jersey, 385 U.S. 493 (1967) ....................................................................... 1, 2, 5-15
*Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) ........................................... 3
*In re Grand Jury Subpoena Dated December 7 and 8 Issued to Bob Stover, Chief of Albuquerque Police Dep't v. United States*, 40 F.3d 1096, 1102–03 (10th Cir. 1994) ................................. 13
*In re Grand Jury Subpoena*, 75 F.3d 446, 448 (9th Cir. 1996) ....................................................... 13
*Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015) ............................................... 3, 4
*Minnesota v. Murphy*, 465 U.S. 420 (1984) ......................................................................2, 7, 11, 14
*SPV-LS, LLC v. Transamerica Life Insurance Company*, 912 F.3d 1106, 1111 (8th Cir. 2019) 3, 4
United States v. Goodpaster, 65 F.Supp.3d 1016 (D. Or. 2014) ............................... 1, 7-10, 12, 14
*United States v. Luger*, 837 F.3d 870, 875 (8th Cir. 2016) ............................................................. 4
*United States v. Rooney*, 63 F.4th 1160 (8th Cir. 2023 ................................................................... 9

Rules

Rule 54(b) .......................................................................................................................... 1, 5, 16

## I. INTRODUCTION

Defendants Leggins, Case, and Bradshaw ask this Court for precisely what Rule 54(b) forbids: a second bite at the apple dressed up as reconsideration. Having already lost their motions to stay, they now seek a judicial mulligan by raising a legal theory and offering "evidence" they chose not to present earlier – despite having had every opportunity, motive, and obligation to do so. Their motion is not a good faith effort to correct clear error or respond to newly discovered evidence; it is a transparent attempt to reverse an adverse ruling by repackaging stale facts with after-the-fact affidavits and a newfound narrative of coercion. But Rule 54(b) does not permit litigation by hindsight, nor does it tolerate strategic sandbagging. The law is clear: a motion for reconsideration is not a vehicle for revisionist advocacy. This Court should deny it outright.

Moreover, the Moving Defendants' *Garrity*-based arguments fail as a matter of law. They have not demonstrated that the Missouri Department of Corrections imposed the kind of direct, coercive threat required to trigger *Garrity* immunity. Unlike the detailed, regulation-backed penalty situation in *Goodpaster*, the Moving Defendants point to nothing more than a vague December 2023 email that says they "should" attend interviews. That is not a mandate. It is not a threat. And it is certainly not a basis for constitutional immunity. At most, it reflects an employer's guidance – not the kind of formal compulsion the law demands. Their affidavits underscore the post hoc nature of this effort. And their continued failure to pursue suppression in the criminal proceedings (with the lone exception of Bradshaw) speaks volumes.

## II. THE MOTION FAILS UNDER WELL-ESTABLISHED STANDARDS FOR RECONSIDERATION.

The Moving Defendants' motion for reconsideration should be denied for the sole reason that it violates bedrock principles governing Rule 54(b) motions. Here, Defendants ask the Court to reverse its prior stay denials and enter an order staying this case for at least 90 days to allow the

1

Cole County Circuit Court to rule on Defendant Bradshaw's suppression motion in the parallel criminal proceedings. (ECF 117, p. 5).

In a nutshell, the Moving Defendants, for the very first time, claim that their statements to the Missouri Department of Corrections and Cole County investigators were compelled in violation of their Fifth Amendment rights under *Garrity v. New Jersey*, 385 U.S. 493 (1967). They rely heavily on *Garrity* to assert that because the DOC allegedly ordered them to cooperate under threat of job loss, their Fifth Amendment rights were violated, and no waiver occurred. *Id.* But a closer review of the record, along with *Garrity* and its progeny, undermines that claim – particularly when considered through the lens of *Minnesota v. Murphy*, 465 U.S. 420 (1984).

In support of their motion, the Moving Defendants submitted newly filed affidavits claiming they believed they were required to participate in the interviews under threat of job loss. Based on these assertions, they contend a stay is necessary to avoid inconsistent rulings and to protect their constitutional rights. Specifically, the Moving Defendants cite the following December 26, 2023, email as evidence of alleged compulsion, claiming it shows they were directed to attend interviews with Cole County Sheriff's Department investigators or lose their jobs; Case and Leggins further assert that DOC supervisors instructed them they were required to attend because a death had occurred at JCCC:

From: Falkenrath, Doris <Doris.Falkenrath@doc.mo.gov>
Sent: Tuesday, December 26, 2023 4:55 PM
To: Kopp, Zachary <Zachary.Kopp@doc.mo.gov>; Durre, Tyler <Tyler.Durre@doc.mo.gov>; Tallent, Jeffrey
<Jeffrey.Tallent@doc.mo.gov>; Bradshaw, Bryanne <Bryanne.Bradshaw@doc.mo.gov>; Nkwocha, Onyewuchi
<Onyewuchi.Nkwocha@doc.mo.gov>; Reynolds, Sean <Sean.Reynolds@doc.mo.gov>; Long, Jennifer
<Jennifer.Long@doc.mo.gov>
Cc: Crane, Craig <Craig.Crane@doc.mo.gov>; Graham, Norman <Norman.Graham@doc.mo.gov>; Martin, Raina
<Raina.Martin@doc.mo.gov>; Stewman, Chelsie <Chelsie.Stewman@doc.mo.gov>
Subject: Interview for January 3rd

The following personnel should report to the Cole County Sheriff's Department on January 3, 2024 to be
interviewed in regards to the death of Offender Othel Moore #1096163:

09:30 - Nurse Jennifer Long
10:00 – Officer Sean Reynolds
10:30 – Officer Onyewuchi Nkwocha
1:00 – CCM Bryanne Bradshaw
1:30 - Lieutenant Jeffrey Tallent
2:00 - Lieutenant Tyler Durre
2:30 – Officer Zach Kopp

Please ask for Detective Sergeant Todd Marsey.


Thank you,
*Doris E. Falkenrath, Warden*
Jefferson City Correctional Center
8200 No More Victims Road
Jefferson City, MO. 65101
Phone: (573) 751-3224 Ext. 2002
Fax: (573) 751-1277
*Jointly Changing Culture Community*

(ECF 117-1, ¶ 5; ECF 117-2, ¶5-7; 117-4, ¶ 6).

However, "[a] motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015). "Nor may a motion for reconsideration serve to introduce evidence that the movant could have produced before the district court decided the prior motion." *SPV-LS, LLC v. Transamerica Life Insurance Company*, 912 F.3d 1106, 1111 (8th Cir. 2019); citing *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)(stating that motions for reconsideration cannot be used to introduce new evidence or legal theories that could have been adduced during pendency of the prior motion). Instead, it is a narrowly confined remedy reserved for "correcting manifest errors of law or fact" or introducing "*newly discovered* evidence." *United States v. Luger*, 837 F.3d 870, 875 (8th Cir. 2016) (emphasis added). Although this Court "has the power to revisit prior decisions of its own … in any circumstance, [it] should be loathe to do so in the absence of *extraordinary circumstances* such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Evans v.*

*Contract Callers, Inc.*, Case No. 4:10CV2358 FRB, 2012 WL 234653, at *2 (E.D. Mo. Jan. 25, 2012)(emphasis added)(citing *Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)(quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8 (1993)). "A district court does not abuse its discretion in denying a motion for reconsideration used for such an 'impermissible purpose.'" *SPV-LS, LLC*, 912 F.3d at 1111 (citing *Julianello v. K-V Pharm. Co.*, 791 F.3d at 923). This is precisely the situation here.

By any measure, the affidavits from Bradshaw, Case, and Leggins are not based on "newly discovered evidence." Rather, the Moving Defendants' allegation that they were compelled to speak to Cole County and Missouri Department of Corrections investigators dates back to December 2023/January 2024. Put another way, the Moving Defendants waited at a minimum 16 months before ever uttering a single word or suggesting in any way that they were forced to talk to investigators or face termination.

Clearly, these are not late-breaking revelations. These are the Moving Defendants themselves – fully aware of their own experiences, fully capable of submitting declarations during the original briefing, and fully motivated to do so if they believed the facts supported suppression in the criminal case. Indeed, they had every opportunity – indeed, every incentive – to submit these declarations in support of their original motions. But they didn't.

At the time this Court ruled on the Moving Defendants' respective motions to stay, the Court considered the record as it stood, and it ruled against them. The Moving Defendants cannot now repackage old evidence with new spin and call it reconsideration. What they seek is not correction – it is a complete do over in disguise. And Rule 54(b) does not permit litigation by do-over.

4

## III. EVEN IF THE MOVING DEFENDANTS' MOTION WASN'T BARRED UNDER RULE 54(B), THEY ARE NOT ENTITLED TO *GARRITY* PROTECTION.

Apart from an alleged subjective belief that they would be terminated if they did not comply with Cole County and DOC investigators and sign the Miranda waiver, the only objective evidence the Moving Defendants rely on to support their claim of compelled statements is the December 26, 2023, email set forth above from Warden Falkenrath. As demonstrated below, however, this evidence falls far short of establishing the type of coercion required to trigger *Garrity* protections.

In *Garrity v. New Jersey*, several police officers were investigated for allegedly fixing traffic tickets. 385 U.S. 493, 494, 87 S. Ct. 616 (1967). Before being questioned, the officers were informed they had the right to remain silent but were also told that invoking that right would result in their termination. *Id.* The officers proceeded to answer questions, and their responses were later used against them – over their objections – in subsequent criminal prosecutions. *Id.* at 495.

The Supreme Court reversed the convictions, holding that the use of statements obtained under threat of job loss violated the officers' rights under the Fourteenth Amendment. *Id.* at 500. The Court explained that the government may not compel self-incriminating statements from public employees by threatening their employment. Doing so, the Court reasoned, strips individuals of the free choice to speak or remain silent and constitutes coercion. *Id.* at 497–99. Because the officers' statements were involuntary, they were inadmissible in the later criminal proceedings. *Id.* at 500.

The Supreme Court extended this principle in *Gardner v. Broderick*, 392 U.S. 273, 88 S. Ct. 1913 (1968), holding that a public employee cannot be terminated solely for asserting the Fifth Amendment. There, a police officer was subpoenaed to testify before a grand jury investigating corruption. *Id.* at 274. He was advised of his right against self-incrimination, instructed to sign a

5

waiver of immunity, and warned that he would be fired if he refused. *Id.* The officer declined to sign the waiver and was subsequently terminated. *Id.* at 275.

The Court ruled that the termination was unconstitutional. It held that the officer could not be forced to choose between waiving his constitutional rights and keeping his job. *Id.* at 277–78. Even if the waiver he was asked to sign might have had no legal effect due to *Garrity*'s protections, the attempt to compel the waiver itself was unconstitutional. *Id.* at 279. The Court emphasized that the Fifth Amendment does not permit coercion through the threat of termination, regardless of whether the waiver would have ultimately been enforceable. *Id.*

Since then, the courts have refined the *Garrity* analysis. In *Minnesota v. Murphy*, the Supreme Court reaffirmed that the Fifth Amendment privilege is not self-executing and must be timely invoked unless the government affirmatively imposes a substantial penalty for silence. The Court held that a probationer's obligation to be truthful with his officer, standing alone, did not create a coercive environment that transformed his otherwise voluntary statements into compelled ones. The Court explained that "a witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the Fifth Amendment privilege rather than answer if he desires not to incriminate himself. If he chooses to answer rather than to assert the privilege, his choice is considered to be voluntary since he was free to claim the privilege and would suffer no penalty as a result of his decision to do so." *Id.* at 427–28.

Here, none of the Moving Defendants asserted the privilege at the time of their interviews – nor have Case or Leggins even attempted to seek suppression of their statements in the related criminal matter at this time. As in *Murphy*, the absence of a credible, contemporaneous threat of termination or discipline, and their failure to invoke the privilege at the time, precludes them from now claiming that their statements were compelled under *Garrity*.

6

Further, in *United States v. Goodpaster*, 65 F.Supp.3d 1016 (D. Or. 2014), the defendant, a postal service supervisor, was indicted for mail theft and subsequently interrogated by federal agents while at work. Although Goodpaster was given Miranda warnings, the court found that he was placed in a "classic penalty situation" due to USPS regulations requiring employee cooperation in investigations, coupled with the risk of job loss for failure to comply. *Id.* at 1033. The court held that this created a coercive environment implicating *Garrity*, and granted Goodpaster's motion to suppress his post-Miranda statements on the grounds that they were compelled and therefore inadmissible in a criminal prosecution. *Id.*

To determine whether *Garrity* immunity applied, the court held that statements made by a government employee are protected only when the government imposes coercive pressure that compromises the employee's free choice. The court made clear that what transforms a voluntary statement into a compelled one for purposes of *Garrity* is that the government, in its capacity as employer, has taken the "extra, impermissible step" of threatening substantial punishment if the employee remains silent. *Id.* at 1027 (citing *Murphy*, 465 U.S. at 436-37). In *Goodpaster*, the government's own regulations mandating cooperation under threat of job loss were sufficient to trigger *Garrity* immunity, even in the absence of an explicit threat during the interview. Thus, *Goodpaster* highlights the fact that *Garrity* applies only where the government affirmatively creates a "penalty situation" by threatening real and substantial consequences for silence. Moreover, the court emphasized that the threatened penalty must be both sufficiently coercive and more than merely hypothetical. *Id.* at 1031.

Here, by contrast, the affidavits submitted by Defendants Bradshaw, Case and Leggins merely state that they believed they were required to participate and feared job loss if they did not cooperate. Notably, none of the Moving Defendants allege that any DOC official explicitly

7

threatened their employment, referenced disciplinary policies, or indicated that refusal to participate would result in termination. (ECF 117-1; ECF 117-2; ECF 117-4). Their claims rest entirely on subjective beliefs – not on any concrete statements or actions by the DOC demonstrating coercion. Simply put, there's no credible evidence that the DOC took the *extra, impermissible step* of demanding that they answer *all* questions under threat of termination.

And, as *Goodpaster* makes clear, even if an employee subjectively fears job loss, the employee *must make an objective showing* that the government either directly or implicitly made answering questions a condition of continued employment. For example, in *Goodpaster*, the employee was subject to an explicit USPS regulation mandating cooperation with OIG investigations, backed by potential "administrative discipline" – a codified and credible penalty – and still the court scrutinized whether that was enough to create compulsion. See *id.* at 1029–30.

Here, the Moving Defendants provide no documentation that such a DOC policy or written order existed or that refusal to speak would have led to immediate termination. The absence of such a policy here is fatal to Defendants' *Garrity* claim.

The Moving Defendants' reliance on the alleged December 2023 email "directive" is equally unavailing. The email merely stated that officers "should" report to scheduled interviews – a term that is advisory, not mandatory. Nowhere does the email say that failure to comply would result in termination, nor does it invoke any disciplinary policy or statutory authority to that effect. In stark contrast to the regulation-based compulsion present in *Goodpaster*, the permissive language here fatally undermines any claim that the Moving Defendants were faced with a classic "penalty situation." A suggestion that one "should" participate simply does not equate to a threat of job loss sufficient to trigger *Garrity* protections. Their argument collapses under its own weight.

Moreover, unlike in *Goodpaster*, Defendants Leggins, Case and Bradshaw were all read their Miranda rights and signed a waiver before giving statements to criminal investigators. (Defs.' Ex. A, Affidavit of Bryanne Bradshaw, ¶ 9; Ex. B, Affidavit of Jacob Case, ¶ 11; Ex. D, Affidavit of Justin Leggins, ¶ 13). The Moving Defendants cannot claim coercion when they were warned of their rights, signed a waiver, and proceeded to give statements without invoking the Fifth Amendment. *See*, e.g., *United States v. Rooney*, 63 F.4th 1160 (8th Cir. 2023)(A signed Miranda waiver "carries significant weight in determining whether [the] waiver was knowing and intelligent.")(internal citation omitted). Moreover, it bears repeating that Bradshaw, Case, and Leggins were all law enforcement personnel and cannot credibly claim that they did not knowingly sign the *Miranda* waiver and thus waive their Fifth Amendment rights when speaking to investigators. As *Goodpaster* reaffirmed, *Garrity* is not a shield for employees who choose to speak freely and only later regret their cooperation. *Id.* at 1023–24.

In short, *Goodpaster* confirms that *Garrity* protections are not triggered by vague fears of termination or after-the-fact strategic repositioning. Without objective proof of a coercive penalty situation, formal compulsion by the state-employer, and the absence of a waiver, Defendants' motion fails.

Finally, the case of *Benjamin v. City of Montgomery*, 725 F.2d 959 (11th Cir. 1986) delivers a forceful repudiation of the very type of coercion theory the Moving Defendants now advance and is directly on point. In *Benjamin*, the Eleventh Circuit squarely rejected the claim that being subpoenaed to appear in court coerces a police officer to testify in that proceeding without invoking his or her Fifth Amendment rights against self-incrimination. In that case, two police officers expressly argued that their testimony was compelled because the City of Montgomery considered

9

appearing in court to be a condition of their employment. The court rejected that claim and wrote

that

> "[o]bviously, it is generally expected that police officers will testify in court. This general expectation, however, does not rise to the level of coercion. Appellees cited nothing in the Montgomery Police Department regulations which specifically requires officers to testify in court at the request of criminal defendants…[A]t the time they were first called to the stand, appellants were not the subject of any disciplinary proceeding, and had not been directed to answer questions on pain of dismissal. Had they testified, their answers would not have been coerced, and could later have been used against them.

*Id.* at 962; see also *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984) ("[T]he general obligation to appear and answer questions truthfully did not in itself convert Murphy's otherwise voluntary statements into compelled ones.").

Like *Benjamin*, the Moving Defendants cite no policy, regulation or order from the Missouri Department of Corrections that required them to speak with investigators under threat of termination. Instead, they rely on a vague claims that they were told by DOC supervisors to present for interviews and an email stating they "should" report for interviews – language even less forceful that the court expectations at issue in *Benjamin*. As *Benjamin* further confirms, a generalized sense of duty or implied pressure does not rise to the level of state compulsion, and cannot transform voluntary statements into constitutionally protected ones. The absence of a formal compulsion mechanism here underscores that Defendants' Garrity arguments are not only unsubstantiated—they are legally baseless.

Notably, of the three Defendants now invoking *Garrity*, only Defendant Bradshaw has filed a motion to suppress in her criminal case. At the time of filing, neither Defendant Case nor Defendant Leggins has pursued any such relief in their own criminal cases.[1] This glaring omission

---

[1] See Exhibit A, a true and accurate Docket Report of Defendant Justin Leggin's criminal case, Case No 24AC-CR0884-01; Exhibit B, a true and accurate Docket Report of Defendant Jacob Case's criminal case, Case No. 24AC-CR00881-01.

underscores the weakness of their claim that they were "compelled" within the meaning of *Garrity*.

If these Defendants truly believed their constitutional rights had been violated, one would expect

them to assert those rights in the venue where suppression actually matters – criminal court. Their

failure to do so not only undercuts the credibility of their newfound "penalty situation" narrative,

but also highlights that this motion to reconsider is a litigation tactic dressed in constitutional

rhetoric, not a legitimate invocation of established immunity. The Court should view their belated

*Garrity* arguments with appropriate skepticism.

In sum, the motion for reconsideration rests on a flawed reading of *Garrity* and misapplies

it in light of *Goodpaster* and its progeny. The affidavits do not show that the DOC took the "extra,

impermissible step" of requiring full answers under threat of job loss. By any reading, the

December 2023 email is a mundane scheduling communication that provides no support for the

Moving Defendants' sweeping claim that they were forced to relinquish their Fifth Amendment

rights. *Goodpaster* clarifies that mere employment status and vague fear of termination are not

enough. Without credible, objective evidence that the DOC affirmatively compelled answers *under

penalty*, the statements cannot be deemed constitutionally coerced.

## IV.    DISCOVERY SHOULD NOT BE STAYED EVEN IF *GARRITY* APPLIED.

Even if the Moving Defendants' statements were subject to *Garrity* immunity – which they

are not – discovery in this case should still not be stayed pending resolution of Defendant

Bradshaw's suppression motion or Defendants Leggins' and Case's prospective supression

motions in the parallel criminal proceedings. In *Frierson v. City of Terrell,* the court squarely

rejected such an overbroad reading of *Garrity* and provides further support for denying the Moving

Defendants' motion. *Frierson v. City of Terrell*, Case No. Civ. A. 3:02-CV-2340H, 2003 WL

21955863 (N.D. Tex. Aug. 15, 2003).

In *Frierson*, a police officer facing both civil and criminal proceedings claimed that his *Garrity*-protected internal affairs statements could not be disclosed in civil litigation, arguing that disclosure might eventually lead to their misuse in his criminal case. The court rejected this speculation outright, holding that *Garrity* bars only the *use* of compelled statements in *criminal proceedings* – not their *possession* or *discovery* in civil litigation. 2003 WL 21955863, at *2–3. The court emphasized that *Garrity* "provides a complete prohibition on the '*use* in subsequent criminal proceedings," but not a shield against civil discovery or a basis to stay proceedings. *Id.* at *2 (citing *In re Grand Jury Subpoena*, 75 F.3d 446, 448 (9th Cir. 1996); *In re Grand Jury Subpoena Dated December 7 and 8 Issued to Bob Stover, Chief of Albuquerque Police Dep't v. United States*, 40 F.3d 1096, 1102–03 (10th Cir. 1994)).

Critically, the *Frierson* court dismissed the same speculative logic Defendants assert here: that discovery in civil litigation might somehow taint their criminal defense. But as *Frierson* holds, "[t]he time for protection will come when, if ever, the government attempts to use the information against the defendant at trial. We are not willing to assume that the government will make such use, or if it does, that a court will allow it to do so." *Id.* at *3 (quoting *Stover*, 40 F.3d at 1103). That reasoning is fatal to Defendants' request for a stay based on speculative Fifth Amendment harm.

The speculative threat of job loss mentioned in a permissive "should report" email does not come close to creating the "classic penalty situation" required under *Garrity*, *Goodpaster*, or *Frierson*. If *Garrity*-protected statements in *Frierson* were still subject to civil discovery, then the unprotected, voluntary statements at issue here plainly do not justify halting this case. *Frierson* confirms that discovery must proceed and that *Garrity* does not offer the sweeping shield the Moving Defendants now seek.

12

## V.     THE COURT'S ORDERS WERE CORRECT THEN AND REMAIN CORRECT NOW.

In denying the Moving Defendants' respective motions to stay, this Court found that Defendants voluntarily waived their Fifth Amendment rights by providing statements to the DOC and Cole County investigators. (ECF Nos. 104 and 106). The Court properly considered *Minnesota v. Murphy*, 465 U.S. 420 (1984), and applied the well-established principle that the Fifth Amendment only prohibits *compelled* self-incrimination. The Court also rightly held that "[t]here are no facts that suggest the voluntary testimony given to the Missouri Department of Corrections or the Cole County Sheriff's Department were compelled." (ECF 104, p. 5; ECF 106, p. 5).

Nothing in the reconsideration motion undermines that conclusion. The declarations merely parrot conclusory language about "feeling compelled," yet the Court has already weighed the voluntariness of these statements based on the legal standard – looking to whether the waiver was knowing, intelligent, and voluntary. That analysis has already been done. The new affidavits change nothing.

Indeed, Moving Defendants' own briefing belies the credibility of their new argument. The affidavits establish that Bradshaw, Case and Leggins were each given a *Miranda* warning and affirmatively signed a waiver before answering questions from the Cole County Sheriff's Department. Yet Defendants now claim this occurred in "an atmosphere of compulsion" and under "fear of losing" their jobs due to the December email. That makes absolutely no sense. A *Miranda* waiver, given knowingly and voluntarily, is the constitutional standard for determining whether a statement is admissible in a criminal proceeding – not a platform for a post hoc claim of coercion simply because the interview might have employment consequences.

Moveover, the Moving Defendants' invocation of Missouri's at-will employment doctrine only underscores the weakness of their argument. It is precisely because they were at-will

13

employees that they could have resigned or refused to participate without any guaranteed legal consequence. At-will status means the DOC had the legal right to terminate employment with or without cause – not that it affirmatively threatened termination for exercising constitutional rights. *Garrity* is not triggered by hypothetical job insecurity or generalized employer authority. If anything, the absence of civil service protections makes the Moving Defendants' failure to point to a clear, enforceable threat of job loss even more damning to their claim of coercion.

Worse still, Defendants cite no legal authority – none whatsoever – in support of the extraordinary relief they seek. They do not point to a single case in which a court granted a motion for reconsideration based on recycled facts and belated affidavits under the circumstances present here, nor do they identify a single decision staying civil discovery because of speculative *Garrity* concerns unsupported by a credible penalty situation. Instead, they rest their entire motion on rhetoric, affidavits drafted more than a year after the fact, and a flawed understanding of constitutional law. This absence of precedent is not an oversight – it is a concession that their position finds no support in the law.

## VI. CONCLUSION

The Moving Defendants had every chance to raise their *Garrity* arguments and submit their supporting affidavits the first time around. They declined. They now seek to revive their failed stay motions not through new law or new facts, but through new spin. That is not what Rule 54(b) permits. Courts do not exist to reward calculated delay or to provide litigants with a second forum for arguments they strategically withheld. Even if this Court were inclined to entertain their recycled arguments, the Defendants' *Garrity* theory crumbles under scrutiny. There is no showing that the DOC imposed a penalty situation. There is no credible evidence of compulsion. There is

no legal basis for a stay. What remains is a motion that is procedurally improper, legally groundless, and factually unconvincing. It should be denied in full.

DATED: May 15, 2025

*Respectfully submitted,*

/s/ Ben Stelter-Embry
Ben Stelter-Embry      MO #65404
EMBRY LAW, LLC
801 W. 47th Street, Suite 219
Kansas City, MO 64112
P. (913) 231-9396
ben@embry-law.com

/s/ Andrew M. Stroth
Andrew M. Stroth
ACTION INJURY LAW GROUP
22 W. Washington Street, #1600
Chicago, IL 60602
P. (844) 878-4529
astroth@actioninjurylawgroup.com

/s/ Steven Hart
Steven Hart
James Ormond
HART MCLAUGHLIN & ELDRIDGE, LLC
22 W. Washington Street, #1600
Chicago, IL 60602
P. (312) 955-0545
shart@hmelegal.com
jormond@hmelegal.com

/s/ Larry Disparti
Larry Disparti
DISPARTI LAW, LLC
121 W. Wacker Drive, Suite 2300
Chicago, IL  60601
P: (312) 506-5511
ldisparti@dispartilaw.com

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

/s/ *Ben Stelter-Embry*
**Attorney for Plaintiff**

16